## WINDFOHR et al. v. JOHNSON'S ESTATE et al.

### No. 12798.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 26, 1932.

Rehearing Denied Jan. 7, 1933.

Fred T. Arnold, of Graham, for appellants.

Marshall & King, of Graham, and C. W. Johnson, Jr., of Fort Worth, for appellees.

DUNKLIN, Justice.

R. F. Windfohr and the Nash & Windfohr Oil Corporation and others are the owners and operators of an oil well known as No. 1 McLeod and an oil and gas lease on which the well was drilled. The well produced both oil and salt water, and the salt water after being separated from the oil was impounded in reservoirs in order to prevent its flow upon adjoining lands. The reservoirs consisted in part of excavations inclosed by concrete dams and in part created by dams across Farmers branch. The well and reservoirs were situated near the headwaters of what is known as Farmers branch, a tributary to Salt creek. Farmers branch is a dry ravine except in time of floods; and during floods the drainage from the territory immediately adjacent empties into it. Some two miles from the oil well just mentioned Farmers branch flows into Salt creek after running across the northwest corner of a tract of 100 acres of land belonging to the estate of C. W. Johnson, Sr., deceased. The heirs of C. W. Johnson recovered a judgment against the owners of the oil well for $500 as damages sustained by them for loss of pecan trees growing on their land along the banks of Farmers branch, which the court found was caused by the deposit of salt water produced from the oil well and which defendants permitted to flow down Farmers branch. From that judgment the defendants have prosecuted this appeal.

The principal question presented by appellants relates to the measure of damages adopted by the trial court, which was the value of the pecan trees as they stood before their injury by the salt water, rather than the difference in the market value of the land before and after its inundation by the salt water.

In 13 Texas Jurisprudence, page 53, the following is said:

"Where fruit trees, vines or bushes have been destroyed or injured the measure of damages has frequently been said to be the difference in the market value of the land immediately before and immediately after the injury. This is not an inflexible rule, however; as the measure of damages may be whatever comes nearest to affording actual compensation for the injury. Thus the measure of damages may be based upon the value of the property destroyed, or upon the amount necessary to compensate the owner for being deprived of it for the uses for which it was intended."

Many decisions are cited in support of that text. T. & P. Ry. Co. v. Graffeo, 53 Tex. Civ. App. 569, 118 S. W. 873; G., H. & S. A. Ry. Co. v. Warnecke, 43 Tex. Civ. App. 83, 95 S. W. 600, and other cases announce the rule that the measure of damages for the destruction of fruit trees, vines, etc., is the diminution in the value of the land. Other decisions, such as T. & P. Ry. Co. v. Gorman, 2 Tex. Civ. App. 144, 21 S. W. 158, St. Louis, etc., Ry. v. Follis (Tex. Civ. App.) 268 S. W. 1030, Stephenville, etc., Ry. v. Baker (Tex. Civ. App.) 203 S. W. 385, and Powell v. Hill (Tex. Civ. App.) 152 S. W. 1125, hold that such damages may be measured by the value of the fruit trees destroyed if it appears that such would be the most practicable way of determining the compensation available to the owner, since compensation is the chief end sought.

In Sabine, etc., Ry. Co. v. Johnson, 65 Tex. 389, it is said: "The measure of damages for negligently deluging the land of another, without permanently taking it, is the value of the products destroyed, including fruit trees, and the injury done to the land, and not the difference between the value of the land before and after the overflow."

To the same effect, is the case of Gulf Pipe Line Co. v. Hurst (Tex. Civ. App.) 230 S. W. 1024; and many authorities are cited to support the following statement in 13 Texas Jurisprudence, page 164: "Only where the injury is permanent, or the nuisance complained of is from its nature permanent, are damages to be measured by the diminution in the market value of the realty affected."

■ According to allegations in plaintiffs' petition, which are supported by testimony introduced, the nuisance complained of was not permanent but temporary, consisting of the occasional flooding of plaintiffs' land from the overflow of the reservoirs in which defendants had impounded the salt water from the oil well; those overflows occurring during heavy rainfalls. It further appears from the evidence that the parties had so treated the nuisance by a voluntary settlement of the claims made by the plaintiffs for loss of pasturage on account of the pollution of the water from the oil well.

Under the authorities noted above we overrule appellants' contention that the court erred in measuring plaintiffs' damages for the destruction of the pecan trees by their value as established by testimony rather than by the diminution in the value of the land by reason of the flooding of the same with salt water. Nor can we say that the damages awarded for the destruction of the pecan trees was excessive in view of the direct and positive testimony supporting the amount allowed.

■ No reversible error is shown by the action of the court in overruling special exceptions to the petition because it did not more particularly itemize damages for the pecan trees, in the absence of any showing that the defendants were taken by surprise by the testimony offered by the plaintiff to prove such damages. Even though it should be held that such special exceptions were meritorious, the error in overruling them was harmless. See 3 Texas Jurisprudence, p. 1246, § 873 et seq., and p. 1254, § 878.

■ Plaintiffs pleaded specially that the pollution of Farmers branch with salt water from defendants' well was a nuisance and also that the defendants were guilty of negligence in causing that result, and testimony introduced was sufficient to sustain the judgment upon either of those theories. Nor can that judgment be disturbed by reason of the testimony tending to show that salt water from wells of other owners also drained into Farmers branch, in the absence of a further showing that salt water from such other wells also flowed down Farmers branch to plaintiffs' land and contributed with that from defendants' well in destroying plaintiffs' pecan trees. The absence of such a showing distinguishes this case from such decisions as Sun Oil Co. v. Robicheaux (Tex. Com. App.) 23 S.W.(2d) 713, at all events. See, also, 20 R. C. L. p. 763, § 13; 27 R. C. L. p. 1212, § 134. According to those authorities, while the general rule is that joint tort-feasors are jointly and severally liable for an injury, there is a further rule which is applied in case of the pollution of a stream of water contributed to by several parties. If it be shown that each of such parties have acted separately and independently of each other and not in concert, then each is liable only to the extent of his contribution to the injury done. The record shows that salt water from wells of other owners which were situated up stream from defendants' well did empty into Farmers branch, but it cannot be said that the evidence showed conclusively that the salt water from those sources was sufficient to and probably did reach plaintiffs' land and thereby contributed to the destruction of the pecan trees. The evidence tended to show that the salt water

which destroyed plaintiffs' pecan trees came entirely from defendants' reservoirs; and in support of the judgment a finding to that effect by the trial judge who tried the case without a jury must be presumed; the burden being upon appellants to show reversible error.

 Nor was there error in the court's refusal of plaintiffs' prayer for an injunction restraining defendants from further operating the well in controversy, since (1) it does not appear that the nuisance complained of is permanent and not abatable; (2) the damages which will result to the defendants by an injunction restraining further operation of the well would be so much greater than any temporary injury to plaintiffs as to warrant a refusal of an application therefor, under the comparative injury doctrine; the testimony showing that the well in question has produced large quantities of oil in the past and is now producing at the rate of 132 barrels a day. 46 C. J. p. 775, § 385; City of Austin v. Bush (Tex. Civ. App.) 260 S. W. 300; Fields Sewerage Co. v. Bishop (Tex. Civ. App.) 30 S.W.(2d) 412, and authorities there cited.

All assignments of error are overruled and the judgment of the trial court is in all things affirmed.