## WICHITA COUNTY WATER IMPROVE-MENT DIST. NO. I v. PEARCE.

### No. 12788.

Court of Civil Appeals of Texas. Fort Worth.
March 18, 1933.

184

A. H. Britain, of Wichita Falls, for appellant.

Luther Hoffman and Otis E. Nelson, both of Wichita Falls, for appellee.

CONNER, Chief Justice.

In 1924 a number of enterprising and forward-looking citizens of Wichita Falls organized, in accord with the terms of title 128, Rev. Civ. Statutes of 1925, what is known as "Water Improvement District No. 1," and for the purpose of furnishing water for irrigation to lands within its district constructed two large dams on the Wichita river, one known as Lake Kemp and the other as Diversion Lake. From the latter lake the district constructed an irrigation ditch extending in an easterly direction on the north side of the river along the foothills or higher ground of the valley so that the water therefrom could be distributed on the lower irrigable lands to the south by gravity flow.

About a year later, to wit, in the early part of 1925, M. H. Pearce, appellee, acquired a tract of land on the south side of the ditch, in rectangular form, containing 11 acres. The irrigation ditch crossed the northwest corner of the Pearce tract and thence extended in an easterly direction on or near its north boundary. At about where the ditch crossed the corner of the Pearce tract a water gate was constructed through which, when elevated, water from the ditch was caused to flow into a lateral ditch extending in a southeasterly direction, from which the Pearce and other lands to the east were irrigated.

On March 26, 1931, Pearce, as plaintiff, filed this suit in the district court of Wichita county against water improvement district No. 1. He alleged that prior to the year 1930 he had planted on his land a peach orchard, alfalfa, and had been able to raise potatoes, corn, rye, peanuts, and every kind of crop; that about the late spring or early summer of that year the vegetation began to die and in a short time did die completely; that seepage waters from the canal and borrow pits and dam constructed by the district drained into and under his land to such an extent that water rose and saturated it, thus bringing up mineral deposits and water-logging his land sufficiently to destroy all of its productiveness and all growth thereon; that before his land was water-logged the tract was reasonably worth in cash $12,000; that it was permanently damaged and not now worth in excess of $2,000; and that he had been thus damaged in the sum of $10,000, which he sought to recover.

Plaintiff alleged that the damage so suffered was proximately caused by the negligence of the district. He alleged five grounds of negligence in the construction of the canal, namely: (a) Construction of an earthen canal; (b) failure to line inside of the canal with concrete, tile, or other impervious substance; (c) construction of gates from canal into lateral ditches; (d) failure to drain borrow pits; and (e) in damming up a small draw above the canal.

Each of these acts of negligence is alleged to have been the proximate cause of plaintiff's damage.

Plaintiff further alleged five grounds of negligence in the operation and maintenance of the canal, namely: (a) That defendant learned after the construction of the canal that water was leaking therefrom and defendant was negligent in failing to install concrete, tile, or other impervious substances in the bottom and sides of the ditch; (b) that gates from the canal to the lateral ditches leaked; (c) that during the years 1929 and 1930 defendant permitted the water in the ditch to flow at a level of from six to twelve inches higher than was reasonably necessary to irrigate the land surrounding the ditch; (d) failure to properly provide drainage for said borrow pits; and (e) failure to construct culvert and drain tank above canal—all of such acts of negligence were alleged to be the proximate cause of plaintiff's injury.

The case was submitted to a jury upon special issues, to many of which assignments of error have been urged. At this point of our conclusions, however, we will notice but two of them, to wit, the first and second, which, together with the answers of the jury thereto, read as follows:

"1. Do you find from a preponderance of

the evidence before you that the irrigation District failed to exercise ordinary care in the construction of its canal on and in the vicinity of the plaintiff's land under all the circumstances of the case? Answer: Yes.

"2. Do you find from a preponderance of the evidence that the District failed to exercise ordinary care in the maintenance of said canal, so as to prevent seepage and leakage from said canal on and in the vicinity of the Pearce land, after the same was constructed? Answer: Yes."

 We have concluded that each of these issues are erroneous. The distinction between permanent and temporary injuries of the character now under consideration has been pointed out and defined by this court in an opinion by Associate Justice Dunklin in the case of Bowie Sewerage Company v. Vann, 59 S.W.(2d) 180. It may be clearly seen from the authorities in that opinion discussed, as well as from authorities hereinafter cited, that the irrigation ditch or canal, as we shall hereinafter term it, as constructed by the district, is of a permanent character; indeed, the plaintiff has not alleged the canal to be a nuisance and abatable as such. On the contrary, as presented, it is a permanent structure authorized and encouraged by statutory enactment intended to promote the public and private interests of the citizens of the territory served and affected, and as such is not a nuisance per se. In such cases damages approximately resulting from a faulty construction accrue to the owner of the land at the time of the original construction and not to a subsequent purchaser.

In 20 R. C. L. p. 45, § 40, it is said: "To constitute an act or omission the foundation of an action at law it must appear that a duty was due from the actor to the person claiming to have been injured by the Act." And in section 42 of the same volume it is said: "If, while in the possession of either real or personal property, an injury is done to that property, the right of action is alone in the then owner, and not in any successor in the title. And hence a purchaser of cattle which are at the time suffering from a disease communicated to them through the negligence of a third person acquires no right of action against the latter." See, also, Mansfield Const. Co. v. Gorsline (Tex. Com. App.) 288 S. W. 1067; City of Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667, 27 A. L. R. 927; Crump v. Hellams (Tex. Civ. App.) 41 S.W.(2d) 288; Decatur Land, etc., Co. v. Rutland (Tex. Civ. App.) 185 S. W. 1064; 45 C. J. 639, § 16.

In connection with issue No. 1 as given by the court, we have considered the first paragraph of special charge No. 6, as submitted by the court. This reads in part as follows: "The defendant would not be liable for any injury resulting from natural and ordinary seepage from an earthen canal, unless it failed to exercise ordinary care in its construction or maintenance."

 This charge, viewed in connection with issue No. 1, at least authorized the jury to consider as actionable negligence the seepage from the canal if they found that the district had failed to exercise ordinary care in its construction, and the affirmative answer of the jury may have been founded on such consideration. Whereas, as we have seen, the plaintiff was not entitled to rely, as a basis of his recovery, upon negligence in the construction of the canal. We do not wish to be misunderstood on this point, however. As we have seen from authorities already noted, it was the clear duty of the district to operate and maintain the canal with due care to prevent injury and damage to users of its waters, and proof of defects resulting from a want of an exercise of ordinary care in the original construction of the canal would be admissible, as evidence merely, in determining whether under all the circumstances due care had been exercised in its maintenance and in the use of its waters, as submitted in the second issue above quoted. We therefore pass to a consideration of the objections to the court's special issue No. 2.

In the interest of clearness we will here again quote issue No. 2: "Do you find from a preponderance of the evidence that the District failed to exercise ordinary care in the maintenance of said canal, so as to prevent seepage and leakage from said canal on and in the vicinity of the Pearce land, after the same was constructed? Answer: Yes."

 It is to be noted that in the consideration of that issue the jury was not limited, as should have been, to the specific acts of negligence alleged in plaintiff's petition, as constituting a want of ordinary care in the maintenance of the canal. See Speer's Laws of Special Issues, p. 239, § 182. Moreover, the plaintiff in this case should not be permitted to recover damages for any injury to his land caused by seepage necessarily incident to the operation of the irrigation system, but should be confined to damages resulting alone from some subsequent act or omission in maintaining or operating this particular kind of irrigation system. See Dew v. American Rio Grande Land & Irrig. Co., 25 S.W.(2d) 603, by Section B of the Commission of Appeals, especially approved by the Supreme Court. Indeed, the court instructed the jury, as shown in the quotation hereinbefore made from charge No. 6, that the defendant district would not be liable for any injury resulting from natural or ordinary seepage from the canal. But we are unable to say that the jury in the consideration of the issue excluded all want of an exercise of ordinary care on the part of the district,

if any, that appears in the 580 pages of the statement of facts in this case, which only resulted in preventing the natural and necessary seepage of a canal of the kind. In other words, the charge is susceptible of the construction which may have been given to it by the jury, that if the evidence was sufficient to show a want of ordinary care on the part of the district to prevent seepage altogether, their answer should be in the affirmative, regardless of the question of whether the care shown in the maintenance was such as to prevent unnatural, unnecessary, or wasteful seepage, yet the finding of the jury on the issue is made a basis of plaintiff's recovery.

What we have just said we think sufficient to call attention to the fact, as we conclude, that the court's special issues 3 and 4 are too broad, as indicated by Speer's Laws on Special Issues, § 182, above quoted. These issues are as follows:

"3. Do you find from a preponderance of the testimony that the District failed to exercise ordinary care in the maintenance of its gate leading to the lateral on plaintiff's land in order to prevent leakage at said gate? Answer: Yes.

"4. Do you find from a preponderance of the evidence that the defendant failed to exercise ordinary care in respect to the drainage of the borrow pits, or any of them, on and adjacent to plaintiff's land? Answer: Yes."

In connection with issue No. 4, we wish to add that the borrow pits, if excavated by the district as alleged, are in character different from that of the canal, and if left in such form and capacity as to retain material bodies of water from heavy rains, seepage, or otherwise, and to overflow or otherwise spread such waters upon the land of the plaintiff in damaging quantities, they would constitute nuisances, and as such abatable, and the district would be liable for such proportionate part of the injuries to plaintiff's land as the evidence might show were so caused. In other words, we think it was the duty of the district in the construction of its canal to leave and maintain such borrow pits in a form that will prevent them from being nuisances that will contribute in any material degree to the elevation of the water table beneath plaintiff's land and of which he complains. What we here say, however, will have no application to the borrow pit near the water gate, of which plaintiff complains, inasmuch as the evidence seems to show without dispute that this pit was dammed by the plaintiff himself and used as a fishpond.

The court in his charge in appropriate order gave definitions of the terms "maintenance," "proximate cause," "independent cause," and "adjacent," to which appellant has assigned errors, and also complains of the court's refusal to give a number of supplementary explanations of several terms defined. As to these assignments, we think it sufficient to say that the definitions as given by the court are in forms many times approved in the authorities, and that the specially requested explanations were properly rejected as in the nature of general charges. To illustrate, we copy the following: "Now comes the defendant Wichita County Water Improvement District No. 1, and after the court had overruled defendant's motion for a peremptory instruction and after the court had prepared his special issues to submit to the jury, and after overruling defendant's exceptions to said special issues, and before the submission thereof, and requests the court in connection with the court's definition of 'negligence' to give to the jury the following further definition and explanation, to wit: 'Irrigation ditch owners are not insurers against damages which may result from the operation of nor to leaks or seepage from such ditch not due to any negligence and the mere fact that such leaks or seepage may have occurred from the ditch of defendant in the vicinity of plaintiff's land, if such did occur, would not constitute negligence on the part of the defendant, unless you further find from a preponderance of the evidence that in the construction or maintenance of said ditch defendant failed to exercise ordinary care and that such leaks or seepage resulted by reason thereof.' "

Appellant assigns error to the refusal of the court to give the following special issues requested:

"1. Has water from rainfall and run-off water produced by rainfall seeped into or underneath plaintiff's land? Answer: ———

"2. Has water from irrigated lands above or in the vicinity of plaintiff's land seeped into or underneath plaintiff's land? Answer: ———

"3. Has water from the water table or other sources above the irrigation canal seeped into or underneath plaintiff's land? Answer: ———

"4. Has water from the plaintiff's fish pond seeped into or underneath plaintiff's land? Answer: ———

"5. Has water from the service lateral leading from the Pearce gate seeped into or underneath plaintiff's land? Answer: ———

"If you have answered all or any of the above requested special issues 'yes,' then you will answer the following requested special issue, but if you have answered all of them 'no' you need not answer this special issue.

"6. Would plaintiff's land have been water logged, if it has been water logged, had no such seepage occurred from the above sources so found by you? Answer: ———."

As will be seen by a consideration of

requested issue No. 6, it is inferable that the preceding issues were propounded with a view of establishing the facts which would sustain appellant's contention and specially pleaded defense that the elevation of the water table under plaintiff's land, if any, was wholly caused by excessive rains and the irrigation of plaintiff's land and other lands in the vicinity. There was undoubtedly cogent evidence in behalf of appellant tending to show such to be the case, and while we recognize the right of appellant to have submitted in appropriate form its defense of sole proximate cause, we doubt that the requested issues above are sufficient to show reversible error.

■ Appellant also insists that the plaintiff's cause of action is barred by limitation. Plaintiff testified that he first discovered the dying condition of his orchard, vineyard, alfalfa, etc., less than two years prior to the institution of his suit, and his action is based alone, as we think it must be, upon negligence in a want of an exercise of ordinary care on the part of the district in the maintenance of its canal and borrow pits.

The following is said in 37 Corpus Juris, p. 891: "Where obstructions erected by the defendant or other acts or omissions by him, not of themselves unlawful as to plaintiff, cause water to overflow plaintiff's land, a cause of action accrues and the statute begins to run when the plaintiff sustains damage from the overflow, not when the obstructions are erected or the other acts or omissions occur; and this is true, although the cause of the overflow is an obstruction of gradual growth not causing damage until the lapse of the statutory period after it first began."

Austin & N. W. Ry. Co. v. Anderson, 79 Tex. 427, 15 S. W. 484, 23 Am. St. Rep. 350, was a case in which a railroad and its culverts were constructed in 1881 and the damage was alleged to have been done in 1886, 1887, and 1888. Appellants complained of the court's refusal to sustain exceptions based on the two years' statute of limitation, and in ruling upon it the court said: "The question is, when did the cause of action accrue,—at the time of the erection of the embankment and culverts, or at the date of the injury? Chief Justice Stayton, in the case of [Houston] Water-Works v. Kennedy, 70 Tex. 233, 8 S. W. 36, discusses the question and gives us a rule. He says: 'When the act is in itself lawful as to the person who bases an action on injuries subsequently accruing and consequent upon the act, it is held that the cause of action does not accrue until the injury is sustained. * * * If, however, the act of which the injury was the natural sequence was a legal injury, by which is meant an injury giving cause of action by reason of its being an invasion of plaintiff's right, then, be the damage however slight,

limitation will run from the time the wrongful act was committed, and will bar an action for any damage resulting from the act, although these may not have been fully developed until within a period of less than necessary to complete the bar.' * * * The building of the embankment and the culverts * * * was not of itself a nuisance. It was no invasion of plaintiff's rights. They were not put on his land. They became a nuisance only at intervals—by diverting water from rain-falls from its usual flow upon plaintiff's land. The embankment and the culverts were permanent, but the nuisance was not." See, also, Clark v. Dyer, 81 Tex. 339, 16 S. W. 1061.

We overrule the contention that the action is barred.

■ Appellant also urges that the verdict and judgment cannot be sustained because of a want of certainty in the extent of the damage, if any, caused by a want of due care on the part of the district. The evidence undoubtedly tends to show that the waterlogged condition of the plaintiff's land, if any, was caused, in part at least, by unusual heavy rains in the fall of 1929 and during the years 1930 and 1931 and by the condition of the service ditch, the duty of caring for which did not rest upon the district, and also by seepage from adjacent irrigated lands. While it may be difficult to determine the extent, if any, that negligence on appellant's part in maintenance contributed thereto, yet the rule in such cases does not preclude all relief against a wrongdoer, if one.

Little, Schuylkill, etc., Co. v. Richards' Adm'r, 57 Pa. 142, 98 Am. Dec. 209, is a case in which suit was brought for damages caused by dirt thrown from several collieries and there was no evidence as to the exact amount of damage or injury caused by each one. The court there said: "True, it may be difficult to determine how much dirt came from each colliery, but the relative proportion thrown in by each may form some guide, and a jury in a case of such difficulty, caused by the party himself, would measure the injury of each with a liberal hand."

In Farnham on Water (2d Ed.) 1716, it is said: "A person polluting a water source is liable in damages only for his own act and not for that of any others who may contribute to the injury. If others have contributed his deposit must be separated by means of the best proof the nature of the case affords and his liability ascertained accordingly."

In the case of Woodland v. Portneuf-Marsh Valley Irrigation Company, 26 Idaho, 789, 146 P. 1106, the irrigation company contended that the water wrongfully discharged from its canal was not sufficient by itself to cause the injury. The court, in holding this position untenable because it was liable for its proportionate injury, said: "But this is not

a good defense, even though true, because where one contributes as an independent tort-feasor toward causing an injury, he will be liable for the injury done by him, although his acts or negligence alone might not have caused any injury. In this case the evidence tends to prove that there were at least six sources from which the water came that injured Woodland's hay, and it is not contended by him that the company was responsible for more than one. And, while the evidence is very indefinite as to the relative and specific amount of water from each source, it is sufficient to show that considerable water from the company's canals wrongfully ran into the creek that overflowed its banks and flooded Woodland's property. And every one who permits water to waste onto the land of others without right is liable for his proportionate share of the injury caused or the harm resulting therefrom, even though the water allowed to run down by each would do no harm if not combined with that of others, and the injury is caused by the combined flow, wherein the waters of all are mixed and indistinguishable."

With reference to the amount of evidence which would justify the award of damages and as to the proportionate amount caused by the act of the several tort feasors, this court further said: "Exact and definite measurements of such waters are not essential to sustain the verdict of a jury in determining what amount of damages a company should pay under such circumstances as compensation for the injury caused by its part of such waters, although some evidence in that respect is essential."

▌▌▌▌ We conclude, therefore, that the district is liable in damages for such proportionate part, if any, as found by the jury, as was proximately caused by its negligence in the maintenance of the canal and borrow pits. It is perhaps to be inferred that the jury in assessing the damages had the principle in mind, for the plaintiff had testified that the total value of his land, exclusive of the improvements of the estimated value of $1,500, prior to the injuries complained of, was $1,000 an acre, and the jury's finding of damage was for $2,500. One witness testified that in his opinion 85 per cent. of the water-logged condition of plaintiff's land was due to seepage from the canal and borrow pits, and the court had instructed the jury in assessing damages to limit them to such only as was directly and proximately caused by the negligence of the district. To the professional mind the charge may seem to be sufficient, but we suggest that upon another trial there should be, as a basis for the court's judgment, an express jury finding on the proportionate part, if any, that the district contributed to the damages to be assessed, and that if the jury should find the water-logged condition of

plaintiff's land was not wholly due to causes other than seepage from the canal and borrow pits, a special issue should then be submitted as to the proper proportionate part, if any, of the injuries caused by negligence on the part of the district.

▌▌▌ The court charged the jury that: "The measure of damage is the difference in market value of the land between a time just before and a time just after such damage, if any, accrued * * *."

It is insisted that the court gave an erroneous measure for the assessment of the damage. While, as we have seen, the basis of plaintiff's right to recovery, if any, arises from the district's negligence in maintaining its canal and borrow pits and hence not necessarily of a permanent character, yet the rule is not inflexible and no evidence is pointed out to show the rental value of the land or the practicability and cost of restoring the land to its former condition by means of drainage, ditches, etc., and it seems to be the holding of our courts that in cases where the injury is to trees, vineyards, and crops having roots which are destroyed, the measure of damages is generally as given by the court.

For instance, in Jones v. Ry. Co., 189 Mo. App. 6, 176 S. W. 465, it is said: "The measure of damages for destruction of an orchard, the injury being to the inheritance, is the difference in the value of the land before and after the destruction."

In the case of Missouri, K. & T. R. Co. v. Fulmore (Tex. Civ. App.) 29 S. W. 688, it is said: "The measure of damages for the destruction of sod by fire is the difference in the market value of the land immediately before and after the fire, including the value of the grass destroyed."

In the case of Texas & N. O. R. Co. v. Smith, 35 Tex. Civ. App. 351, 80 S. W. 247, it is held that, in an action for an injury to an orchard, the measure of the damages was the difference in the market value of the land before and after the injuries to the orchard.

In the case of Galveston, H. & S. A. R. Co. v. Warnecke, 43 Tex. Civ. App. 83, 95 S. W. 600, the court held: "Where an orchard is destroyed by the act of a tort-feasor, the owner is entitled to recover for the injury to his realty, and the wrongdoer will not be heard to say that the land, if used for other purposes, will produce as much revenue; the owner being entitled to use his property for any lawful purpose and when its value for that purpose is decreased by the wrongful act to another he is entitled to recover as damages the difference between its value for the purpose for which he desired to use it before and after the commission of the wrong."

See, also, Missouri, K. & T. R. Co. v. Malone, 59 Tex. Civ. App. 254, 126 S. W. 936; 13

Texas Jurisprudence, p. 53; Windfohr v. Johnson, 57 S.W.(2d) 215, by this court.

Without further discussion, for the reasons stated, we conclude that the judgment below should be reversed, and the cause remanded for another trial not inconsistent with this opinion.