FROMME

v.

TENNESSEE GAS TRANSMISSION CO.

No. 10181.

Court of Civil Appeals of Texas.

Austin.

Dec. 2, 1953.

Rehearing Denied Jan. 6, 1954.

Thomas R. Bell, Edna, for appellant.

Stofer, Proctor, Houchins & Anderson, Victoria, for appellee.

GRAY, Justice.

This is a suit for damages to land, for the loss of the use of improvements on the land and for the death of two cows. Appellant alleged that her damages resulted from the discharge of water from appellee's gas transmission plant located about one-half mile from her lands and on land not owned by her, it being alleged that such water contained harmful chemicals.

Appellant's suit was filed May 27, 1952, and she went to trial on her second amended original petition filed February 20, 1953. Appellee answered by general denial, a plea that appellant's cause of action was barred by the two-year statute of limitations, and, in the alternative, that any damages suffered by appellant prior to May 27, 1950, was barred by said two-year statute of limitations, Vernon's Ann.Civ.St. art. 5526.

A trial to a jury was had, and at the conclusion of the testimony the trial court, upon appellee's motion, withdrew the case from the jury and rendered judgment that appellee take nothing.

Appellant filed a motion for new trial wherein she urged upon the trial court that her suit was based on: (1) damage to her lands from the water itself, and (2) damage to the lands caused by chemicals in the water. However her brief here is directed to her theory that the water contained harmful chemicals.

The appeal is before us on six points, five of which are to the effect that the trial court erred in holding that appellant's cause of action was barred by limitation under the two-year statute, and one to the effect that the trial court erred in holding the evidence insufficient to warrant the submission of any issue to the jury. Appellee has joined issue with appellant on these points by its six counter-points to the effect that the trial did not so err.

Appellee began the operation of its plant about February 1, 1948, and in the operation of the plant it pumped water from wells into facilities of the plant which water, after its use, was discharged into a drainage ditch. This ditch extended from the plant across lands owned by persons not parties here and up to the edge of appellant's land. The natural drainage from the plant appears to be along the course of the ditch and across the lands of appellant. When the drainage ditch filled with water from the plant, or from rain, or from both, it then flowed in some amount onto appellant's land. In 1949, additions were made to the plant, the use of water was increased to the extent that about 40,000 gallons per day were discharged into the drainage ditch. This condition continued until appellee installed a 24-inch drain pipe from its plant to the Guadalupe River through which, beginning September 4, 1950, it discharged the water used in the plant. This pipe was not across appellant's lands. In 1950, the water from the plant was flooding the land of adjoining owners and appellee recleaned the drainage ditch or channeled the water so as to confine it to the ditch.

In the summer of 1950, the overflow water rendered appellant's dipping vat and pens, used by her in the handling of livestock, unusable, made the roads to the pens impassable for trucks going there to haul cattle away and hindered, if it did not prevent, appellant driving her livestock to the pens. On low and level places on appellant's land the water spread out and stood. After the water from the plant was discharged into the pipe appellant's lands dried out and its damaged condition appeared.

One of appellant's cows died July 15, 1950, and another August 1, 1950. These cows had been grazing on the overflowed land and died under unusual circumstances. Appellant, on occasions, complained to appellee about the water and was told that it was harmless.

In 1949, an easement was submitted to appellant which she refused to sign because of its provisions relative to the discharge of spoilage from the plant. She then suggested that appellee pipe the water across her land which it refused to do.

On July 22, 1950, appellant took samples of the water on her land. One sample from running water and one from still water was tested by a testing laboratory and the analysis showed the water contained various chemicals or substances in such quantities as to be injurious to livestock. Also there was testimony that salt (salt being shown in the analysis) was harmful to grass.

There was evidence as to the appearance of appellant's land after the water dried up; that it was barren of grass; that some of the trees were dead, and that the chemicals in the water would become concentrated on the land by the evaporation of the water and its exposure to the sunlight. Oil in the approximate amount of 5,000 gallons per month was purchased and used on appellee's premises. The analysis of the water showed it to contain a harmful amount of oil. Appellee's testimony was that the waste oil from its plant together with the basic sediment caught in the drips along its pipeline was burned in a pit on the premises and was not permitted to escape. There was also testimony as to the rainfall in the vicinity during the period of time in controversy.

Appellant testified as to the market value of her land before and after its alleged damaged condition. There was also testimony as to the amount of the land that had been damaged, and as to one tract there was testimony that it had a market value which was lessened by the presence on it of the damaged area.

In our statement of what the evidence before us shows we have, except in one instance, disregarded conflicts in the testimony.

█ To dispose of the question of limitation here presented we of course must determine the question: Could appellant wait and determine the disastrous results of the water on her lands, or was she required to bring her suit within two years after it first flowed on her land?

The many cases on this question are not easy to apply and distinguish as to the facts before us. However, we think the well considered opinion in Baker v. City of Fort Worth, 146 Tex. 600, 210 S.W.2d 564, 566, 5 A.L.R.2d 297, and the authorities therein cited and quoted clearly establish the rules applicable here. These rules as there quoted are: first, quoted from Houston Water-Works v. Kennedy, 70 Tex. 233, 8 S.W. 36, as follows:

"When the act is in itself lawful as to the person who bases an action on injuries subsequently accruing and consequent upon the act, it is held that the cause of action does not accrue until the injury is sustained."

and second, quoted from 37 C.J. 891, Sec. 255 (54 C.J.S., Limitations of Actions, § 172, p. 135) as follows:

"Where obstructions erected by defendant, or other acts or omissions by him, not of themselves unlawful as to plaintiff, cause water to overflow plaintiff's land, a cause of action accrues and the statute begins to run when

plaintiff sustains damage from the overflow, not when the obstructions are erected or the other acts or omissions occur; and this is true, although the cause of the overflow is an obstruction of gradual growth not causing damage until the lapse of the statutory period after it first began. But when the obstructions constitute of themselves some invasion of plaintiff's rights, the cause of action accrues and the statute begins to run at the time when the obstruction is erected or completed."

The Court further quoted from City of Amarillo v. Ware, 120 Tex. 456, 40 S.W. 2d 57, as follows:

" * * * where the result is uncertain, the owner of property, if he so desires, has the right to wait and see what the result will be when the improvements are subjected to an actual test."

and then said:

"That rule should be given effect here. The construction of the bridge was lawful, and it was not certain that damages of any kind would ensue. The petitioner should not be penalized for awaiting the disastrous results."

Here of course the operation of the plant by appellee on land not owned by appellant and the discharge of water from the plant into the drainage ditch were not acts unlawful as to appellant and did not become unlawful until appellant's rights were invaded. It may be true that in the early stages of appellee's operations water in some amount flowed onto appellant's land but it was not of sufficient amount to cause appreciable damage and certainly not the damage here complained of. Such damages resulted from the increased discharge of water causing appellant's dipping vat and pens to be unusable, her cows died and as the land dried out the damages that had occurred became obvious and capable of judicial ascertainment.

While the testimony before us does not disclose whether appellant's use of her stock pens, dipping vat and the road to the pens has been restored by reason of the water drying up after September 4, 1950, we think we must assume from the record that her damage in that respect was only temporary. However the damage to the land is alleged and testified to as being permanent.

The trial court was in error in holding that appellant's cause of action was barred by limitation under the two year statute.

Appellee had water taken from the drainage ditch tested for chemicals and the analysis showed it did not contain chemicals or substances in such quantities as to be harmful. It also introduced evidence to show the character of the water discharged at the plant never changed.

In its brief appellee says:

"There was undoubtedly a jury question raised at the trial as to whether the water contained harmful chemicals at all, but there was no jury question as to *when* such chemicals, if any, were first injected into the water. There is not one iota of evidence to support a finding that Appellee *for the first time* deposited chemicals on Appellant's lands after May 27, 1950. Therefore, upon the record in this case, Appellant had one cause of action against Appellee, that being for discharge of the water upon her lands, whether the jury believed such water contained harmful chemicals or not."

It then proceeds to argue that the cause of action was barred two years after May 27, 1950.

What we have already said shows a jury question was presented as to the amount of damages, if any, appellant has suffered to her land, and even though the damage for the death of the two cows and the damage for loss of the use of the improvements, if standing alone, may not be sufficient to raise a jury issue, we think the cause should be reversed and remanded generally.

The judgment of the trial court is reversed and the cause is remanded.