SCHNEIDER NATIONAL CARRIERS,
INC. et al., Petitioners,

v.

Andrea L. BATES et al., Respondents.

No. 03–0236.

Supreme Court of Texas.

Oct. 1, 2004.

John Dixon Walker, Michael P. Cash, Cash Allen L.L.P., James Edward Smith, Beirne, Maynard & Parsons, L.L.P., Amy Douthitt Maddux, Michael L. Brem, F. Walter Conrad Jr., and Karlene D. Poll, Baker Botts LLP, William Howard Farrell, Cotton Farrell, P.C. and James M. Riley Jr., Coats Rose Yale Holm Ryman & Lee, Houston, Guy M. Hohmann, Hohmann Taube & Summers, L.L.P., Austin, Marvin B. Peterson and Ron T. Capehart, Law Office of Marvin B. Peterson, Houston, for petitioners.

Allen Eli Bell and John B. Turney, Bell, Turney, Coogan & Richards, L.L.P., Austin, Nova Carlene Rhodes and Shelly Ann Sanford, Goforth, Lewis & Williams, Carlene Rhodes Lewis, Goforth Lewis Sanford LLP, Houston, for respondents.

Justice BRISTER delivered the opinion of the Court.

This is one of several multi-party suits by residents living near the Houston Ship

Channel complaining of conditions created by industrial plants nearby. Because the residents' own complaints show the conditions have existed for many years, the trial court granted summary judgment based on limitations. The court of appeals reversed, finding a fact question on whether the nuisances alleged were temporary or permanent.[1] We granted the petition to try to clarify the distinction, one of the oldest and most complex in Texas law.

We hold that the distinction between temporary and permanent nuisances must take into account the reasons for which that distinction is drawn. Viewed from that perspective, the record here establishes as a matter of law that the alleged nuisances were permanent, and thus barred by limitations. We reverse the court of appeals' judgment and render judgment for the defendants.

## I. Background

■ Andrea Bates and seventy-eight other individuals are homeowners and renters[2] who have resided in the Haden Road area near the Houston Ship Channel for at least two years.[3] The defendants operate a trucking firm, a painting and sandblasting firm, and firms that manufacture bleach, wood preservatives, polyesters, and other chemical products. The residents allege air contaminants, odors, lights, and noise from the plants interfere with their use and enjoyment of property, and assert claims for nuisance, trespass, negligence, negligence per se, negligent endangerment, and gross negligence.

The trial court signed a "Lone Pine" case-management order [4]requiring the residents to specify (among other things) their dates of residence, specific complaints, and substances they contend were emitted from the defendants' plants. In response, the residents filed affidavits, each and every one of which included the following:

- The conditions that have resulted in my claims are ongoing and occur frequently.
- Air pollution that has caused my complaints has occurred on an ongoing basis since I have lived here. One or more of my symptoms/complaints occur each time the wind comes from the direction of the industrial plants or facilities, and it is worse when the wind is out of the south, when conditions are humid, or when it rains.
- I have been exposed on a regular basis to one or more of these substances and possibly others.

In addition, individual affidavits included more specific descriptions of the alleged nuisances:

- When I was inside I would keep my windows closed at all times to keep the foul odor out.
- The house and yard are constantly dirty.

1. 95 S.W.3d 309, 314. The court of appeals subsequently denied the defendants' motion for rehearing en banc. See 143 S.W.3d 102 (Radack, C.J., joined by Taft, J., dissenting).

2. A tenant has standing to assert a nuisance complaint. See, e.g., Holubec v. Brandenberger, 111 S.W.3d 32, 34–35 (Tex.2003).

3. Additional plaintiffs residing in the area for less than two years nonsuited their claims and are not before us.

4. Lore v. Lone Pine Corp., No. L–33606–85, 1986 WL 637507 (N.J.Super.Ct.L.1986) (requiring plaintiffs in toxic tort litigation to furnish basic facts to support claims of injury and property damage); see Able Supply Co. v. Moye, 898 S.W.2d 766, 769–71 (Tex.1995) (holding trial court abused its discretion in refusing to compel each plaintiff in toxic tort case to indicate which product made by which of 300 defendants caused injury).

- Our car is always covered with black stuff.
- There is always dust blowing in my backyard.
- I have a picnic table in my backyard which is constantly covered in a black film.
- We always have to keep the windows and doors closed and stay inside because of the foul odors.
- It smells so bad that you cannot sit outside and enjoy it. The dust is also really bad and covers our house and cars constantly.
- The foul smell bothers me constantly.
- There is always dust blowing in my backyard.

None of the affidavits mentions bright lights from the defendants' facilities. While several mention ailments of varying severity, the residents' pleadings, appellate briefs, and the affidavit submitted by their medical expert in response to the case-management order allege causation only as to symptoms typical of discomfort rather than disease, thus alleging nuisance damages rather than personal injury.[5]

The residents also submitted an affidavit from a chemical engineer, who opined that the defendants' plants are "directly upwind" from most of the plaintiffs' residences, and suggested several steps that could reduce emissions, odors, noise, and light from the plants without rendering operations uneconomic.

The defendants moved for summary judgment based on limitations, asserting that the residents' affidavits (the only evidence submitted in support of the motions) established as a matter of law that their claims alleged permanent nuisances. The trial court granted the motions.

The First Court of Appeals reversed, finding fact issues were created by contradictions in the residents' own affidavits regarding the frequency of nuisance conditions and by their expert's affidavit on the feasibility of injunctive relief.[6] The court of appeals remanded the case, presumably for a jury to decide whether the facts alleged constituted a temporary or permanent nuisance.[7]

## II. Limitations and Nuisances

### A

A "nuisance" is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities.[8] There is no question that foul odors, dust, noise, and bright lights—if sufficiently extreme—may constitute a nuisance.[9]

5. *See Vestal v. Gulf Oil Corp.*, 149 Tex. 487, 235 S.W.2d 440, 441–42 (1951) (holding award for discomfort and loss of enjoyment was not claim for personal injuries).

6. 95 S.W.3d at 314.

7. *Id.*

8. *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex.2003).

9. *See, e.g., id.* at 37–38 (remanding nuisance judgment based on foul odors, flies, dust, noise, and light from feedlot operation for consideration of one-year bar in Right to Farm Act); *Bay Petroleum Corp. v. Crumpler*,

372 S.W.2d 318, 318–20 (Tex.1963) (affirming jury verdict finding no nuisance as wind did not carry "obnoxious gases, fumes, odors and stenches" from gas-storage operations to plaintiffs' land in substantial quantities); *Parsons v. Uvalde Elec. Light Co.*, 106 Tex. 212, 163 S.W. 1, 1–2 (1914) (affirming jury verdict based on smoke, dust, and cinders from electric power plant); *Rosenthal v. Taylor, B. & H. Ry. Co.*, 79 Tex. 325, 15 S.W. 268, 269 (1891)(remanding nuisance claim based on stagnant water, noise, dust, smoke, and cinders caused by railroad operations); *see also* 1 Dan B. Dobbs, Dobbs Law of Remedies: Damages–Equity–Restitution § 5.6(1), at 754 (2d ed. 1993) ("Pollution of the air or water,

■■ The limitations period for a private nuisance claim is two years.[10] As with many other common-law claims, the accrual date is not defined by statute, but is a question of law for the courts.[11]

■ For more than a hundred years, this Court has held that accrual of a nuisance claim depends on whether the nuisance alleged is "permanent" or "temporary." [12] A permanent nuisance claim accrues when injury *first* occurs or is discovered; a temporary nuisance claim accrues *anew* upon each injury.[13]

The distinction is critical in this case, as it is undisputed that conditions similar to those the residents allege have existed for many years. If the nuisances alleged here are temporary, injuries that occurred within two years of suit are timely regardless of when they began; if they are permanent, all the residents' claims are barred.

## B

Many other jurisdictions make the same distinction between temporary and permanent nuisances for the purpose of determining when limitations accrues.[14] But

or excessive noise or lights, if extreme enough, can count as nuisances.") (footnotes omitted); 3 William Blackstone, Commentaries on the LAWS OF ENGLAND 217 (1768) ("[I]f one erects a smelting house for lead so near the land of another, that the vapor and smoke kills his corn and grass, and damages his cattle therein, this is held to be a nuisance.").

10. *See* Tex. CIV. PRAC. & REM. CODE § 16.003; *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984).

11. *See Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex.1998).

12. *See, e.g., Baugh v. Tex. & N.O. Ry. Co.*, 80 Tex. 56, 15 S.W. 587, 587–88 (1891); *Austin & N.W. Ry. Co. v. Anderson*, 79 Tex. 427, 15 S.W. 484, 485 (1891). The same terms have been used for a different purpose in property damages cases: to designate whether the appropriate measure of property damage is repair cost and lost rent (temporary) or lost market value (permanent). *See, e.g., Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978) (applying temporary/permanent distinction to property damage caused by flooding, without mention of any nuisance claim). According to a noted commentator, this use results from conflating general property damage cases with nuisances, and would be better served by addressing directly which measure of property damage is reasonable, as the temporary/permanent test "is a relatively crude one, and it may be misleading." Dobbs, *supra* note 9, § 5.2(2), at 716–18; *cf. Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 235 (Tex.2004) (rejecting

market-value damage in property damage case as it greatly exceeded total repair costs).

13. *See Bayouth*, 671 S.W.2d at 868; *Atlas Chem. Indus., Inc. v. Anderson*, 524 S.W.2d 681, 684–85 (Tex.1975); *Vann v. Bowie Sewerage Co.*, 127 Tex. 97, 90 S.W.2d 561, 562 (1936); *Lyles v. Tex. & N.O. Ry. Co.*, 73 Tex. 95, 11 S.W. 782, 783 (1889).

14. *See, e.g., Beatty v. Washington Metro. Area Transit Auth.*, 860 F.2d 1117, 1122 (D.C.Cir. 1988); *Huffman v. U.S.*, 82 F.3d 703, 705 (6th Cir.1996) (applying Kentucky law); *Aetna Cas. & Sur. Co. v. Gulf Res. & Chem. Corp.*, 600 F.Supp. 797, 801 (D.C.Idaho 1985) (applying Idaho law); *City of Tucson v. Apache Motors*, 74 Ariz. 98, 245 P.2d 255, 257 (1952); *Mangini v. Aerojet–Gen. Corp.*, 12 Cal.4th 1087, 51 Cal.Rptr.2d 272, 912 P.2d 1220, 1221 (1996); *Hoery v. U.S.*, 64 P.3d 214, 218 (Colo.2003); *Weinhold v. Wolff*, 555 N.W.2d 454, 462–63 (Iowa 1996); *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 15 P.3d 338, 343–44 (2000); *Knight v. City of Missoula*, 252 Mont. 232, 827 P.2d 1270, 1277 (1992); *Wischmann v. Raikes*, 168 Neb. 728, 97 N.W.2d 551, 564 (1959); *Sundell v. Town of New London*, 119 N.H. 839, 409 A.2d 1315, 1320–21 (N.H.1979); *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 144 N.J. 84, 675 A.2d 1077, 1085 (1996); *City of Sioux Falls v. Miller*, 492 N.W.2d 116, 118(S.D.1992); *Breiggar Props., L.C. v. H.E. Davis & Sons, Inc.*, 52 P.3d 1133, 1135(Utah 2002); *Taylor v. Culloden Pub. Serv. Dist.*, 214 W.Va. 639, 591 S.E.2d 197, 203(2003); *Carlton v. Germany Hammock Groves*, 803 So.2d 852, 855(Fla.Ct.App.2002); *Keane v. Pachter*, 598

the test used to make the distinction in Texas is fairly unique.

Most states define nuisances by looking at the structure of the source or the possibility of stopping it.[15] Thus, some define a permanent nuisance as one that stems from a permanent structure being operated in a lawful, non-negligent manner.[16] Others define a temporary nuisance as one that can be abated by injunction, and a permanent nuisance as one that cannot.[17] Still others balance several factors in making the determination.[18]

N.E.2d 1067, 1072 (Ind.Ct.App.1992); *Hoffman v. United Iron & Metal Co.*, 108 Md.App. 117, 671 A.2d 55, 68(1996); *Traver Lakes Cmty. Maint. Ass'n v. Douglas Co.*, 224 Mich. App. 335, 568 N.W.2d 847, 853 (1997); *Thomas v. City of Kansas City*, 92 S.W.3d 92, 100(Mo.Ct.App.2002); *Brown v. Scioto County Bd. of Comm'rs.*, 87 Ohio App.3d 704, 622 N.E.2d 1153, 1162 (1993); *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 293 (Okla.Ct.App.1996); *Caldwell v. Knox Concrete Prods., Inc.*, 54 Tenn.App. 393, 391 S.W.2d 5, 11 (1964); *see also* 1 Fowler V. Harper et al., The Law of Torts § 1.30, at 139 (3d ed. 1996) ("In most jurisdictions, however, a distinction is made between 'permanent' and 'temporary' nuisances.").

15. Michael A. DiSabatino, Annotation, *When Statute of Limitations Begins to Run as to Cause of Action for Nuisance Based on Air Pollution,* 19 A.L.R.4th 456, 459–60 (1983) ("The courts seem to be generally agreed that where a nuisance in the form of air pollution is permanent in that the structure giving rise to the air pollution is of a permanent nature, the air pollution is a consistent product of the operation of the structure, and the air pollution is not practicably abatable, the statute of limitations begins to run against a cause of action for the nuisance at the time that the nuisance begins, provided that the permanent nature of the nuisance can be ascertained at that time.").

16. *See, e.g., Huffman,* 82 F.3d at 705 (holding nuisance temporary if source is permanent structure improperly built or operated and remediable at reasonable expense); *City of Tucson,* 245 P.2d at 259; *S. New Eng. Ice Co. v. Town of W. Hartford,* 114 Conn. 496, 159 A. 470, 476 (1932); *Shelley v. Ozark Pipe Line Corp.,* 327 Mo. 238, 37 S.W.2d 518, 519 (1931); *Brown,* 622 N.E.2d at 1162. The lawfulness test is related to the abatability test, as courts hesitate to enjoin operations that are lawful and properly operated. *See Holubec v. Brandenberger,* 111 S.W.3d 32, 39–

40 (Tex.2003) ("Nor should a decree of injunction be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights.").

17. *See, e.g., Dombrowski v. Gould Elecs., Inc.* 954 F.Supp. 1006, 1012 (M.D.Pa.1996); *Van Deusen v. Seavey,* 53 P.3d 596, 600 (Alaska 2002) (finding nuisance temporary as noise from barking sled dogs could be abated); *Apache Motors,* 245 P.2d at 257; *Mangini,* 51 Cal.Rptr.2d 272, 912 P.2d at 1227; *Dougan,* 15 P.3d at 344; *Hoffman,* 671 A.2d at 68; *Knight,* 827 P.2d at 1277; *Wischmann,* 97 N.W.2d at 564; *Sundell,* 409 A.2d at 1321; *Russo Farms,* 675 A.2d at 1086; *City of Gainesvile v. Waters,* 258 Ga.App. 555, 574 S.E.2d 638, 643 (2002); *Thomas,* 92 S.W.3d at 100; *Valdez v. Mountain Bell Tel. Co.* 107 N.M. 236, 755 P.2d 80, 84 (1988); *Brown,* 622 N.E.2d at 1162; *N.C. Corff P'ship, Ltd.,* 929 P.2d at 293; *Clabo v. Great Am. Resorts, Inc.,* 121 S.W.3d 668, 671 (Tenn.Ct.App.2003); Restatement (Second) of Torts § 930(2) (1979) ("If the future invasions would not be enjoined because the defendant's enterprise is affected with a public interest, the court in its discretion may rule that the plaintiff must recover for both past and future invasions in the single action.").

18. *See, e.g., Beatty,* 860 F.2d at 1122 (stating temporary nuisance is one that is either abatable or "intermittent or periodical"); *Dougan,* 15 P.3d at 344(considering source's structure, nature of the damages, and ability to determine or estimate damages); *City of Sioux Falls,* 492 N.W.2d at 118 (considering source's structure and whether it could reasonably be abated); *Beck Dev. Co. v. S. Pac. Transp. Co.,* 44 Cal.App.4th 1160, 52 Cal. Rptr.2d 518, 557–60 (1996) (rejecting any "single overriding test," and looking to factors such as abatability, whether level of injury was static or changing, and whether source of nuisance continued to operate or had been shut down).

■ But for more than a century, Texas courts have defined temporary and permanent nuisances along lines that are somewhat closer to the plain meaning of the words. We define a permanent nuisance as one that involves "an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely."[19] Thus, a nuisance is permanent if it is "constant and continuous,"[20] and if "injury constantly and regularly recurs."[21]

■ Conversely, a nuisance is temporary if it is of limited duration.[22] Thus, a nuisance may be considered temporary if it is uncertain if any future injury will occur,[23] or if future injury "is liable to occur only at long intervals."[24] A nuisance is also temporary if it is "occasional, intermittent or recurrent,"[25] or "sporadic and contingent upon some irregular force such as rain."[26]

Texas courts in some cases have also considered several of the factors used by other states. For example, some courts in categorizing nuisances have considered whether the source is a permanent structure,[27] whether it is operated lawfully and without negligence,[28] and whether it can be abated.[29] As discussed below, these factors may indeed figure into certain nuisance cases.

But the general Texas rule—based on whether a nuisance is constant, regular, and likely to continue or whether it is sporadic, uncertain, and likely to end—has been in place for more than a hundred years. Texas appellate opinions rarely refer to the nuisance jurisprudence from other jurisdictions, nor have the many able counsel in this case. Moreover, in other

---

19. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984); *Atlas Chem. Indus., Inc. v. Anderson*, 524 S.W.2d 681, 684 (Tex.1975); *see also Columbian Carbon Co. v. Tholen*, 199 S.W.2d 825, 826 (Tex.Civ.App.-Galveston 1947, writ ref'd) (affirming jury's finding of permanent nuisance based on instruction, "By the term 'permanent' as used in the foregoing charge is meant a condition of such a character and which exists under such circumstances that it will be presumed to continue indefinitely.").

20. *Bayouth*, 671 S.W.2d at 868; *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978); *Atlas*, 524 S.W.2d at 684.

21. *Rosenthal v. Taylor, B. & H. Ry. Co.*, 79 Tex. 325, 15 S.W. 268, 269 (1891).

22. *See id.*

23. *See Baker v. City of Fort Worth*, 146 Tex. 600, 210 S.W.2d 564, 567 (1948) (holding nuisance claim timely despite earlier flood, as further flooding remained uncertain).

24. *Rosenthal*, 15 S.W. at 269.

25. *Bayouth*, 671 S.W.2d at 868.

26. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978); *Atlas Chem. Indus., Inc. v. Anderson*, 524 S.W.2d 681, 684–85 (Tex. 1975).

27. *See, e.g., Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 571 (Tex.App.-Texarkana 2000, pet. denied) (holding chicken hatchery waste dumped on neighboring hillside was temporary as defendants "did not build a facility").

28. *See, e.g., Baugh v. Tex. & N.O. Ry. Co.*, 80 Tex. 56, 15 S.W. 587, 587 (1891) (holding allegations that railroad was operating trains in unlawful manner alleged temporary nuisance).

29. *See, e.g., Town of Jacksonville v. McCracken*, 232 S.W. 294, 295 (Tex.Com.App.1921, judgm't adopted) ("But if the nuisance is of a permanent character and not subject to be abated, or if it is treated as permanent by the parties, or if the injury to the land is permanent and irremediable, the proper measure of damages to be recovered is the depreciation in the value of the property."); *Nugent*, 30 S.W.3d at 571 (holding chicken hatchery

jurisdictions there is no consensus as to where the line between permanent and temporary nuisances should be ("there is no clear test generally accepted"[30]), or how it should be applied ("which category to allocate a particular nuisance leads to widely varying results"[31]).

Accordingly, we adhere to the traditional American rule that distinguishes temporary from permanent nuisances, and to the traditional Texas rule for making that distinction. But we consider the latter rule in some detail because of the conflicts that have arisen among Texas appellate courts regarding its application.

### C

The line in Texas between temporary and permanent nuisances "can be plainly and simply stated," but "its application to the facts involved in each case has been a continuing problem."[32]

The difficulty in applying the stated rule stems from the relative nature of the terms involved.[33] Whether a nuisance is "temporary" or "permanent" obviously turns on how long it lasts, and whether it is "infrequent" or "continuous" on how often it occurs. But without a standard of reference, the terms give no guidance regarding where either line should be drawn.

For example, every plant, feedlot, or landfill could be considered "temporary" when compared to all of human history, or "permanent" when compared to the life of a mayfly. And while conditions occurring every day are "continuing" and those occurring once in a blue moon "infrequent," it is not clear which term ought to apply to those in between.[34] Though we have recognized the continuum between temporary and permanent nuisances,[35] we have never indicated where the boundary lines might be.

Accordingly, Texas courts addressing very similar cases have reached very different results. For example, in *Kraft v. Langford*, we held flooding caused by a storm sewer in Montgomery County was a

---

waste dumped on neighboring hillside was temporary as it was "easily abatable").

**30.** Harper, *supra* note 14, § 1.30, at 1:140.

**31.** DiSabatino, *supra* note 15, 460; *see also Miller v. Cudahy Co.*, 858 F.2d 1449, 1453 (10th Cir.1988) ("Drawing a distinction between permanent and temporary damages resulting from a nuisance is at best problematical."); *City of Tucson v. Apache Motors*, 74 Ariz. 98, 245 P.2d 255, 257 (1952) ("Much confusion has arisen in the various jurisdictions of the United States as to just what constitutes a permanent nuisance as distinguished from a temporary or continuing nuisance."); *Taylor v. Culloden Pub. Serv. Dist.*, 214 W.Va. 639, 591 S.E.2d 197, 203 (2003) (stating distinction between temporary and permanent nuisances for limitations purposes "have often proven difficult to categorize"); *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App.4th 1160, 52 Cal.Rptr.2d 518, 556 (1996) (stating that distinction between permanent and continuing nuisances "can create particular problems for the parties").

**32.** *Nugent*, 30 S.W.3d at 569.

**33.** *Mel Foster Co.Props., Inc. v. Am. Oil Co.*, 427 N.W.2d 171, 175 (Iowa 1988) ("The terms 'permanent' and 'temporary' are somewhat nebulous in that they have practical meaning only in relation to particular fact situations and can change in characterization from one set of facts to another.")

**34.** For example, a nuisance that occurs every summer would be constant if the context is only that season, infrequent if the context is the full year, and constant again (in a seasonal sense) if the context is the course of a decade. *See, e.g., Lamb v. Kinslow*, 256 S.W.2d 903, 905 (Tex.Civ.App.-Waco 1953, writ ref'd n.r.e.) (holding nuisance involving annual burning of cotton burrs near plaintiff's home was permanent, as "he is deprived of the enjoyment of his home for several months of the year").

**35.** *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978).

temporary nuisance as a matter of law.[36] But in *City of Amarillo v. Ware*, we held flooding caused by a storm sewer in Amarillo was properly pleaded as a permanent nuisance.[37] It is not clear from either opinion why heavy rains near the Gulf Coast *must* be considered temporary, while those in the Texas Panhandle do not.[38]

Cases involving soot and cinders are similarly incompatible. In *Parsons v. Uvalde Electric Light Co.*, we held that smoke, dust, and cinders from an electric power plant constituted a temporary nuisance as a matter of law.[39] But in *Rosenthal v. Taylor, B. & H. Railway Co.*, we held that noise, dust, smoke, and cinders from passing locomotives constituted a permanent nuisance as a matter of law.[40] Again, it is hard to see why smoke from an electrical plant is necessarily temporary, while smoke from passing trains must be permanent.

Irreconcilable differences also appear to permeate cases involving foul odors. In *City of Lubbock v. Tice*, the Seventh Court of Appeals found that odors from a landfill presented a permanent nuisance as a matter of law, even though they varied "as the West Texas wind changed."[41] In *Meat Producers, Inc. v. McFarland,* the Fifth Court of Appeals affirmed a jury verdict finding odors from a cattle feedlot permanent, even though they varied with wind direction and humidity.[42] But the Fourteenth Court of Appeals held in *Gulf Coast Sailboats, Inc. v. McGuire* that jurors could deem odors from a fiberglass plant temporary, even though they occurred about three times a week, and more often in summer.[43] And in *Youngblood's, Inc. v. Goebel*, the Tenth Court of Appeals found odor from a poultry-rendering plant was temporary as a matter of law, because it "depends on direction of wind," "comes and goes," and was present "3 or 4 times a week."[44] Thus, in four cases regarding foul odors carried on variable winds, Texas appellate courts have deemed them temporary as a matter of law, permanent as a matter of law, and a fact question that could go either way.

Assuming each of these cases turned on the facts stated in each opinion, half of them must be wrong; they are simply unreconcilable. But because the Texas test has no standard of reference, it is not immediately apparent which.

■ Accrual of limitations is a question

---

36. *Id.* Although an alternate ground for the Court's holding was that the storm sewer had been ordered closed, we nevertheless stated that it possessed "only the characteristics of temporary injury and none of the characteristics of permanent harm" because it "depends upon the fortuitous event of rain and is not continuous." *Id.*

37. 120 Tex. 456, 40 S.W.2d 57, 61–62 (1931).

38. Completing the cycle, the Second Court of Appeals has held flooding caused by a storm sewer in north Texas was permanent as a matter of law. *Durden v. City of Grand Prairie*, 626 S.W.2d 345, 348 (Tex.App.-Fort Worth 1981, writ ref'd n.r.e.).

39. 106 Tex. 212, 163 S.W. 1, 1 (1914).

40. 79 Tex. 325, 15 S.W. 268, 269 (1891); *see also Angelina Hardwood Lumber Co. v. Irwin*, 276 S.W.2d 407, 410 (Tex.Civ.App.-Galveston 1955, no writ) (holding sawdust and soot from sawmill was permanent nuisance).

41. 517 S.W.2d 428, 431 (Tex.Civ.App.-Amarillo 1974, no writ).

42. 476 S.W.2d 406, 410, 413 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.).

43. 616 S.W.2d 385, 387 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.).

44. 404 S.W.2d 617, 619–20 (Tex.Civ.App.-Waco 1966, writ ref'd n.r.e.).

of law for the court.[45] Clearly, it is up to jurors to decide material factual disputes about frequency, duration, and extent of nuisance conditions.[46] But without a clear standard of reference for the relative terms involved here, jurors cannot apply the law to the facts without deciding the law also.

Moreover, as the distinction between temporary and permanent nuisances determines limitations for bringing a claim, different standards in different cases result in different limitations periods. "Uncertainty in the test for the distinction can put the parties in a serious predicament."[47] As Chief Justice Radack noted in her dissent below, "the law governing nuisances is unclear in its present state."[48] We granted the petition in this case to try to clarify the standards that should apply.

### III. Coordinating Distinctions with Consequences

#### A

While there is considerable uncertainty about which nuisances are temporary or permanent, there is no uncertainty about the legal consequences. For guidance on how to make the distinction, we look to the consequences that flow from it.

Thirty years ago, this Court noted several factors that lead to, and still remain associated with, the distinction between temporary and permanent nuisances:

> The question of the temporary or permanent character of injury to land was initially conceived as an aspect of damages. At common law, a plaintiff suing for a continuing invasion of his land could recover for only those damages accrued by the time of trial. To relieve the burden placed upon an aggrieved landowner to bring successive suits, the courts developed the concept of permanent injury to permit the recovery of past and future damages. Coactive with the advantage of a future damage award was the disadvantage of bringing the action within the limitation period as measured from the first injury; i.e., the cause of action accrued for limitations purposes at the time of the first actionable injury.[49]

In this passage, we recognized three distinct consequences that result from categorizing a nuisance as permanent or temporary: (1) whether damages are available for future or only past injuries; (2) whether one or a series of suits is required; and (3) whether claims accrue (and thus limitations begins) with the first or each subsequent injury.

These consequences are not unique to Texas; one commentator has noted the same effects in cases from all jurisdictions:

> The cases discussed in this section speak of a "permanent nuisance" or the like in order to decide three questions: (1) whether an earlier recovery of damages is res judicata [i.e., whether one or a series of suits is required]; (2) to decide whether the claim is barred by the stat-

**45.** *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 221 (Tex.2003); *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 567 (Tex.2001).

**46.** *See, e.g., Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex.1978) (holding court erred in submitting jury issue as to permanent damages when only evidence showed that nuisance was temporary); *Mitchell Energy Corp. v. Bartlett,* 958 S.W.2d 430, 436 (Tex.App.-Fort Worth 1997, writ denied) (affirming jury finding that injury to property was "continuous and ongoing").

**47.** Harper, *supra* note 14, § 1.30, at 1:140.

**48.** 143 S.W.3d at 103.

**49.** *Atlas Chem. Indus., Inc. v. Anderson,* 524 S.W.2d 681, 684 (Tex.1975) (citations omitted).

ute of limitations; and (3) to decide whether the plaintiff can or must recover for all future damages at one time.[50]

Because of the substantial consequences that flow from designating a nuisance as temporary or permanent, we believe application of the distinction must correspond to those consequences. Accordingly, we examine each in turn as an aid to clarifying the standards that should apply.

## B

First, the distinction between temporary and permanent nuisances determines the damages that may be recovered. It has long been the rule in Texas that if a nuisance is temporary, the landowner may recover only lost use and enjoyment (measured in terms of rental value) that has already accrued.[51] Conversely, if a nuisance is permanent, the owner may recover lost market value—a figure that reflects all losses from the injury, including lost rents expected in the future.[52] Because the one claim is included in the other, the two claims are mutually exclusive; a landowner cannot recover both in the same action.[53]

This legal consequence suggests a specific context for relative terms like "temporary" and "permanent."An isolated occurrence may result in temporary loss of use and enjoyment, but is unlikely to result in permanent loss of market value unless the damage cannot be remedied or is likely to occur again. Conversely, construction of a source of foul odors is likely to lower the market value of neighboring property permanently, even if operations are occasionally discontinued for months at a time.[54] In either case, whether the nuisance is temporary or permanent does not turn on the conditions on any particular day or week, but on expectations about its impact over a period of years.

The same considerations place terms like "sporadic" or "constant" in the same time frame. Viewed from the perspective of likely damages, it is by no means necessary for a nuisance to occur daily for it to have a "constant and continuous" effect. For example, if a nuisance subjects land along a river to annual flooding, market

**50.** Dobbs, *supra* note 9, § 5.11(1), at 820; *see also* Harper, *supra* note 14, § 1.30, at 1:139 (noting same consequences). One court has held a nuisance may be designated differently for each of these purposes. *See Beatty v. Washington Metro. Area Transit Auth.*, 860 F.2d 1117, 1125 (D.C.Cir.1988) ("[A] nuisance may be classified as 'permanent' for the purpose of assessing damages, and as 'continuing' for statute of limitations purposes.").

**51.** *See Kraft*, 565 S.W.2d at 227; *Atlas*, 524 S.W.2d at 684; *Vestal v. Gulf Oil Corp.*, 149 Tex. 487, 235 S.W.2d 440, 442 (1951); *City of Amarillo v. Ware*, 120 Tex. 456, 40 S.W.2d 57, 61 (1931); *Baugh v. Tex. & N.O. Ry. Co.*, 80 Tex. 56, 15 S.W. 587, 587 (1891); *Rosenthal v. Taylor, B. & H. Ry. Co.*, 79 Tex. 325, 15 S.W. 268, 269 (1891); *Trinity & S. Ry. Co. v. Schofield*, 72 Tex. 496, 10 S.W. 575, 576–77 (1889); *see also Lone Star Gas Co. v. Hutton*, 58 S.W.2d 19, 21 (Tex.Com.App.1933, holding approved).

**52.** *Bay Petroleum Corp. v. Crumpler*, 372 S.W.2d 318, 320 (Tex.1963); *Hutton*, 58 S.W.2d at 20.

**53.** *Kraft*, 565 S.W.2d at 227; *Pickens v. Harrison*, 151 Tex. 562, 252 S.W.2d 575, 582 (1952) ("If respondents' suit is one for permanent damages to the land, the measure of damages is the decreased value of the land, and no recovery for the land's rental value is permitted."). In addition, in either temporary or permanent nuisance cases, a landowner may recover separate damages for loss of personal property, such as growing crops. *Hutton*, 58 S.W.2d at 20–21; *Dallas & W. Ry. Co. v. Kinnard*, 18 S.W. 1062, 1065 (Tex. 1892).

**54.** *Meat Producers, Inc. v. McFarland*, 476 S.W.2d 406, 410, 411 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.).

values would normally reflect that expectation (positively for some agricultural or wildlife uses, negatively for most others), even though many months may intervene between floods and in some years there may be none at all. By contrast, if a nuisance is likely to create flooding only during a hurricane, the infrequency and unpredictability of such a disaster may make future losses difficult to evaluate, thus requiring a landowner to await actual damage before filing suit.

■ On the other end of the continuum, market values generally reflect expectations about future years but not future centuries. Thus, a permanent nuisance need not be eternal; "[d]amage need not be perpetual in order to be permanent."[55] Accordingly, a sanitary landfill that lowers the market value of neighboring property may be deemed permanent, even if the landfill is expected to close in twenty years.[56]

Of course, every change in property value does not indicate a permanent nuisance. Property values are affected by many factors; a decrease in market value does not

mean there is a nuisance,[57] any more than an increase means there is not.[58]

But nowhere do market values of land fluctuate each hour depending on wind direction and humidity. Because estimates of market value normally rest on expectations not about future days but about future years, the time frame for designating a nuisance as temporary or permanent should as well.

■ It is of course impossible to say precisely when the future effects of a nuisance are sufficiently clear that a reasonable estimate of its impact on market value can be made. As with other types of damages, the future effects of a nuisance do not have to be established with perfect accuracy.[59] But there must be competent evidence that establishes them with reasonable certainty.[60] Accordingly, in cases in which injury occurs often enough before trial that jurors can make a reasonable estimate of the long-term impact of the nuisance on the market value of a property, they ought to be allowed to do so. The standard of reference for applying the distinction between temporary and permanent nuisances should reflect that consideration.[61]

**55.** *City of Lubbock v. Tice,* 517 S.W.2d 428, 431 (Tex.Civ.App.-Amarillo 1974, no writ).

**56.** *Id.*

**57.** *Crumpler,* 372 S.W.2d at 319–20 (finding no fatal conflict between jury answers "no" to nuisance and "$5,500" to lost property value).

**58.** *Abbott v. City of Princeton,* 721 S.W.2d 872, 876 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (holding nuisance claim was not negated by evidence that property value had increased).

**59.** *Hindman v. Tex. Lime Co.,* 157 Tex. 592, 305 S.W.2d 947, 953 (1957) ("[I]f an injured plaintiff has produced the best evidence available, and if it is sufficient to afford a reasonable basis for estimating his loss, he is not to be denied a substantial recovery because the exact amount of the damage is incapable of

ascertainment.") (quoting *Shannon v. Shaffer Oil & Refining Co.,* 51 F.2d 878, 882 (10th Cir.1931)).

**60.** *Id.* at 952–53 (holding evidence of examples of damage to a few autos from nuisance insufficient to establish damages as to entire inventory); *cf. Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 504–05 (Tex.2001) (considering damages for lost profits and lost crops); *City of Austin v. Teague,* 570 S.W.2d 389, 395 (Tex.1978) (reversing award of lost rental value for undeveloped land as speculative and uncertain).

**61.** *See Rosenthal v. Taylor, B. & H. Ry. Co.,* 79 Tex. 325, 15 S.W. 268, 269 (1891) ("The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most

## C

The second reason for distinguishing temporary and permanent nuisances stems directly from the first. If future harm can reasonably be predicted, the nuisance is a permanent one and a claimant must sue for all injuries in one suit. But if future harm is anyone's guess, the nuisance is a temporary one and a claimant must bring a series of suits involving the same parties, pleadings, and issues as each injury occurs.[62]

Texas law forbids splitting one claim into several suits when a single suit will suffice.[63] When we adopted the transactional approach to res judicata, we stated that a "subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, *could have been litigated* in a prior suit."[64] These policies advance the interest of the litigants (who must pay for each suit), the courts (who must try each suit), and the public (who must provide jurors and administration for each suit).[65]

Modern circumstances redouble these concerns. Perhaps a series of duplicative suits was a reasonable approach to nuisances in a day when courts were less busy and litigation cheaper. Many years ago, nuisance suits could sometimes be concluded within a year or two of filing.[66] But that is often not the case today; for example, in this case the joinder of scores of plaintiffs and defendants in the trial court and en banc reconsideration in the court of appeals (both relatively recent innovations) meant disposition below took four and one-half years. If a nuisance that causes injury every year is deemed temporary, several new suits may have to be filed before appeals on previous ones have been exhausted.

Here again, these legal consequences place the terms at issue in context. Requiring separate suits for separate injuries is feasible if injury occurs once a decade. But if injury occurs several times a year, allowing separate suits for each occurrence has substantial costs. Further, variations in each verdict may send conflicting messages to the parties, or to the market of potential buyers. And the litigants will be left in a state of perpetual litigation; while "good fences make good neighbors,"[67] repeated litigation is unlikely to.

There is always a risk in assessing future damages that a particular claimant will be compensated too little or too much. But this alone has never been enough to justify a series of suits, at least when

certain and satisfactory manner the compensation to which the plaintiff is entitled.").

62. *See, e.g., Van Deusen v. Seavey*, 53 P.3d 596, 600 (Alaska 2002) (finding second suit was not barred by res judicata as nuisance was temporary).

63. *Pustejovsky v. Rapid–American Corp.*, 35 S.W.3d 643, 646–47 (Tex.2000); *Eastland County v. Davisson*, 13 S.W.2d 673, 675–76 (Tex.Com.App.1929, judgm't adopted).

64. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex.1992) (emphasis added).

65. *See Pustejovsky*, 35 S.W.3d at 653.

66. *See, e.g., Fromme v. Tenn. Gas Transmission Co.*, 263 S.W.2d 574, 575 (Tex.Civ.App.-Austin 1953), *rev'd*, 153 Tex. 352, 269 S.W.2d 336, 337 (1954) (deciding appeal on nuisance suit filed in trial court nineteen months earlier); *Baker v. City of Fort Worth*, 146 Tex. 600, 210 S.W.2d 564, 564 (1948) (concluding suit filed nineteen months earlier); *Lyles v. Tex. & N. O. Ry. Co.*, 73 Tex. 95, 11 S.W. 782, 783 (1889) (concluding nuisance suit filed twelve months earlier). *But see Kinnard*, 18 S.W. at 1062 (decided four and one-half years after nuisance suit was filed).

67. Robert Frost, North of Boston, Mending Wall (1915).

future damages are reasonably ascertainable. Accordingly, if an alleged nuisance occurs often enough before trial to allow jurors to evaluate it fully in one case, we should apply the distinction in a way that allows them to do so.

**D**

Third, characterizing a nuisance as temporary or permanent determines when limitations accrues, and thus when an injured party's claims are barred.

 Generally, a cause of action accrues and limitations begins to run when facts exist that authorize a claimant to seek judicial relief.[68] As nuisance claims arise only upon a *substantial interference* with property use, they normally do not accrue when a potential source is under construction; instead, a landowner "has the right to wait and see what the result will be when the improvements are subjected to an actual test."[69] But once operations begin and interference occurs, limitations runs against a nuisance claim just as against any other.[70]

 We have recognized the discovery rule as "a very limited exception" to accrual when an injury is both inherently undiscoverable and objectively verifiable.[71] As plaintiffs will usually know of unreasonable discomfort or annoyance promptly, application of the discovery rule in nuisance cases is rare.[72] And even when the discovery rule applies, accrual occurs upon notice of injury, even if the claimant does not yet know the full extent of damages or the chances of avoiding them.[73]

But a different rule may apply when the nature of a nuisance is substantially changed. In *Atlas Chemical Industries, Inc. v. Anderson,* a manufacturing plant discharged acid, fly ash, carbon, and lignite into creeks upstream from the plaintiff for more than forty years before suit was filed.[74] Nevertheless, we held limitations did not bar a suit for a temporary nuisance asserting an entirely new and different injury—damages caused by new emissions (acids required by new government regulations) to new property (sixty acres of cropland undamaged by previous pollution) due to new forces (extraordinary floods shortly

68. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex.1998).

69. *City of Amarillo v. Ware,* 120 Tex. 456, 40 S.W.2d 57, 62 (1931); *accord City of Abilene v. Downs,* 367 S.W.2d 153, 160 (Tex.1963) (holding nuisance claim did not accrue when sewage plant was first opened, but when capacity increased so as to begin impacting neighbor's property); *Baker,* 210 S.W.2d at 567 (holding nuisance claim based on construction of bridge did not accrue until eight years later when it caused substantial flooding).

70. *Fromme,* 269 S.W.2d at 338 (holding nuisance claim accrued when flooding began, and was barred by limitations even though greater part of damage occurred within two years of suit); *Vann v. Bowie Sewerage Co.,* 127 Tex. 97, 90 S.W.2d 561, 562–63 (1936) (holding limitations accrued when creek was

polluted, even though landowner did not discover smells until six months later).

71. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455–56 (Tex.1996).

72. *See, e.g., Vann,* 90 S.W.2d at 562–63 (holding limitations accrued upon purchase of property with polluted creek, even though landowner did not discover smells until six months later); *Mitchell Energy Corp. v. Bartlett,* 958 S.W.2d 430, 437–38 (Tex.App.-Fort Worth 1997, writ denied) (holding discovery rule barred nuisance claims by plaintiffs who noticed well water "smelled like rotten eggs" many years before filing suit).

73. *PPG Indus., Inc. v. JMB/Houston Centers Partners L.P.,* 146 S.W.3d 79 (Tex.2004).

74. 524 S.W.2d 681, 683 (Tex.1975).

before suit).[75] Thus, an old nuisance does not excuse a new and different one.

Again, these general rules for limitations place the relative terms used to describe temporary and permanent nuisances in context. If noisome conditions occur only once, the nuisance will normally be temporary because it creates a *substantial interference* with property on that *occasion*, but not on any other. Conversely, once the conditions begin to recur more often, the nuisance should normally be treated as permanent because it is injury to the property in general that has occurred, not separate injuries that ought to be considered separately.

### E

Based on these considerations, we hold that the traditional Texas distinction between temporary and permanent nuisances should be applied using the same standard of reference that applies to the consequences flowing from it. Thus, if a nuisance occurs several times in the years leading up to a trial and is likely to continue, jurors will generally have enough evidence of frequency and duration to reasonably evaluate its impact on neighboring property values.[76] In such cases, the nuisance should be treated as permanent, even if the exact dates, frequency, or extent of future damage remain unknown. Conversely, a nuisance as to which any future impact remains speculative at the time of trial must be deemed "temporary."

We recognize this line will not always be bright. But the inconsistent results in Texas and other jurisdictions do not suggest any brighter, and the infinite variety of circumstances in which nuisance cases arise makes it difficult to be more precise.

Further, this standard should distinguish temporary and permanent nuisances in most cases. Generally, if a nuisance occurs at least a few times a year and appears likely to continue, property values will begin to reflect that impact, and jurors should be able to evaluate it with reasonable certainty. Even if a nuisance causes annoyance only during certain weather conditions or certain months,[77] annual experience should provide a sufficient basis for evaluating the nuisance. Absent evidence that current experiences are unrepresentative or about to change, such nuisances should be considered "permanent" as a matter of law.

Moreover, this flexible standard has the virtue of coordinating the distinction with its effects; any rule that does not can lead to illogical results. For example, if a rule deemed every nuisance permanent that occurs at least monthly (and all others temporary), permanent damages might be collected even if the nuisance was about to be cleaned up and surrounding property values restored. And an annual (but not monthly) interference with a hunting lease, a garden, or one's rooftop every Christmas Eve would have to be asserted in annual suits, even though the economic impact

**75.** *Id.* at 685–87; *cf. Pustejovsky v. Rapid–American Corp.*, 35 S.W.3d 643, 653 (Tex. 2000) (holding accrual of claim for malignant asbestos disease occurs upon discovery of that disease despite earlier claim for nonmalignant conditions).

**76.** *See, e.g., City of Temple v. Mitchell,* 180 S.W.2d 959, 964 (Tex.Civ.App.-Austin 1944, no writ) (finding sewage plant permanent nui-

sance as conditions continued during three years since suit had been filed).

**77.** *See, e.g., Weinhold v. Wolff,* 555 N.W.2d 454, 457–58, 463 (Iowa 1996) (finding hog-feeding facility that included 500,000–gallon waste basin was permanent nuisance, even though odors suffered by neighbors was dependent on temperature, wind, and humidity conditions).

could be estimated with reasonable certainty.

This rule of application also preserves the proper role of the jury in settling factual differences. Jurors must still decide the frequency, extent, and duration of noxious conditions, facts they must settle in any event in deciding whether a nuisance exists. Jurors must also settle any disputes as to whether similar conditions are reasonably certain to continue in the future. But jurors cannot decide questions such as whether damages can be estimated with reasonable certainty, whether principles of res judicata allow one or a series of suits, or when limitations ought to accrue—all legal matters that must be decided by the court.

■ Accordingly, we hold that a nuisance should be deemed temporary only if it is so irregular or intermittent over the period leading up to filing and trial that future injury cannot be estimated with reasonable centrality. Conversely, a nuisance should be deemed permanent if it is sufficiently constant or regular (no matter how long between occurrences) that future impact can be reasonably evaluated. Jurors should be asked to settle the question only to the extent there is a dispute regarding what interference has occurred or whether it is likely to continue. We disapprove of those cases suggesting the contrary to the extent they are inconsistent with this opinion.[78]

■ We also disapprove of statements in a few cases that suggest nuisance claimants may elect whether to assert a temporary and permanent nuisance.[79] As noted above, the consequences that flow from designating a nuisance as temporary or permanent are not arbitrary ones, but follow directly from the underlying facts.[80] Certainly, alternative allegations may be asserted when the facts are unclear. But when they are not, claimants cannot opt

**78.** *See City of Odessa v. Bell*, 787 S.W.2d 525, 527, 530 (Tex.App.-El Paso 1990, no writ) (affirming jury verdict that flooding was temporary nuisance even though by time of trial it had occurred nineteen times); *Gulf Coast Sailboats, Inc.*, 616 S.W.2d at 387 (holding odors drifting from plant occurring several times per week could be temporary nuisance); *Youngblood's, Inc. v. Goebel*, 404 S.W.2d 617, 620 (Tex.Civ.App.-Waco 1966, writ ref'd n.r.e.) (holding odor from poultry-rendering plant temporary as a matter of law as it depended on direction of wind). As the considerations we emphasize today are not always clear in previous opinions, and in some cases alternate grounds exist for the judgment, we disapprove of the following cases only to the extent they are inconsistent with this opinion. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 869 (Tex.1984) (holding affidavit asserting that damages was sporadic and intermittent created fact question whether saltwater seepage was temporary); *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978) (holding storm sewer causing flooding after rainfall had "none of the characteristics of permanent harm," but noting alternatively that issuance of temporary injunction against further discharge of floodwaters also rendered damages temporary); *Parsons v. Uvalde Elec. Light Co.*, 106 Tex. 212, 163 S.W. 1, 1–2 (1914) (holding smoke, dust, and cinders from electric power plant was temporary nuisance as a matter of law, without indicating how often conditions occurred).

**79.** *See Abbott v. City of Princeton*, 721 S.W.2d 872, 875 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (holding limitations did not bar suit for conditions beginning long before filing as plaintiffs sought damages only for the two years before filing); *Stein v. Highland Park Indep.Sch. Dist.*, 540 S.W.2d 551, 554 (Tex. Civ.App.-Texarkana 1976, writ ref'd n.r.e.) (same). *But see* Restatement (Second) of Torts § 930(1) (stating that if it appears that invasions of property "will continue indefinitely, the [plaintiff] may at his election recover damages for the future invasions in the same action as that for the past invasions").

**80.** *Bayouth*, 671 S.W.2d at 868 ("The character of an injury as either permanent or temporary is determined by its continuum.").

for an indefinite limitations period or a series of suits whenever they would prefer.

## IV. Source or Injury

The parties also disagree whether the test of frequency and constancy should focus on the defendant's operations or the plaintiff's injury. Here again, Texas opinions can be cited for either position, sometimes focusing on the defendant's operations,[81] and other times on the plaintiff's injuries.[82]

For example, in *Bayouth v. Lion Oil Co.*, we held underground seepage of saltwater from an old drilling site could be considered temporary (creating a fact question) because it was visible on the plaintiff's property only after periods of heavy rain.[83] But in *Walton v. Phillips Petroleum Co.*, the Eighth Court of Appeals held similar seepage was permanent as a matter of law, as there was nothing temporary about the pit from which it came.[84]

Opinions from other states reflect the same conflicts: some focus solely on the defendant's operations,[85] some on the plaintiff's injuries,[86] and some view the two together.[87]

■■■ While the facts of particular cases have often directed our focus to the sending- or receiving-end of a nuisance, it appears that we have generally considered a nuisance permanent when *either* the defendant's operations *or* the plaintiff's injuries make it so:

When a nuisance is created by the *construction of works* in their nature permanent, . . . the rule is that all .damages resulting therefrom to property may be recovered in one action, and the proper measure of damages is the depreciation in the value of the property. That rule also applies when the *injury* resulting from the nuisance is of a permanent character.[88]

---

81. *See, e.g., Rosenthal v. Taylor, B. & H. Ry. Co.*, 79 Tex. 325, 15 S.W. 268, 269 (1891) (holding nuisance permanent "[i]f it results from a *cause* which is either permanent in its character or which is treated as permanent by the parties") (emphasis added); *see also* Tex. Agr.Code § 251.004(a) (barring nuisance suits one year after defendant's agricultural operations begin).

82. *See, e.g., Baker v. City of Fort Worth*, 146 Tex. 600, 210 S.W.2d 564, 565–67 (1948) (holding nuisance temporary because even though bridge structure was permanent, heavy rains that caused flooding were temporary).

83. 671 S.W.2d at 869.

84. 65 S.W.3d 262, 273–74 (Tex.App.-El Paso 2001, pet. denied).

85. *See, e.g., Breiggar Props., L.C.*, 52 P.3d at 1135 ("[I]n classifying a trespass as permanent or continuing, we look solely to the *act* constituting the trespass, and not to the *harm* resulting from the act."). Generally, courts that apply abatability as the test for distin-

guishing temporary and permanent nuisances necessarily focus on the defendant's operations, as that would be the subject of abatement. *See supra* note 17.

86. *See, e.g., Taygeta Corp. v. Varian Assocs., Inc.*, 436 Mass. 217, 763 N.E.2d 1053, 1065 (2002) (finding continuing nuisance due to continuing seepage onto plaintiffs property, even though defendant's operations had long-since ceased); *Briscoe v. Harper Oil Co.*, 702 P.2d 33, 36 (Okla.1985).

87. *See, e.g., Hoery v. U.S.*, 64 P.3d 214, 219 n. 8 (Colo.2003) (noting that while "[o]ther jurisdictions have attempted to clarify the distinctions between continuing and permanent torts by focusing either on the 'cause' of the harm . . . or the 'harm' resulting from that cause . . . [w]e do not find these classifications helpful . . . [as] they are usually linked") (citations omitted).

88. *Baugh v. Tex. & N. O. Ry. Co.*, 80 Tex. 56, 15 S.W. 587, 587 (1891) (emphasis added) (citations omitted); *see also Bayouth*, 671 S.W.2d at 868 ("Permanent injuries to land

We believe this is still the correct rule. In most nuisance cases, a permanent source will result in permanent interference. "Ordinarily it makes no difference whether the jury finds that the nuisance is permanent or the damage is permanent, since a permanent nuisance may be presumed to result in permanent damage." [89]

Moreover, focusing solely on the source or injury to categorize nuisances could lead to anomalous results. For example, if a defendant's operations permanently decrease market values in a neighborhood containing both year-round residences and vacation homes, the nuisance cannot be deemed permanent as to the former but temporary as to the rest. A resident cannot convert a constant interference into a temporary nuisance by going outside only sporadically; nor can a plant operator accomplish the same by shutting down operations for a few weeks. [90]

Of course, the presumption that a constant source has constant effects may be rebutted. Texas law has long recognized there may be a discontinuity between source and injury, as when injury occurs only after a heavy rain in regions where that is a rare commodity. [91] But air and wind are more evenly distributed; air-quality complaints like those here may be worse under certain conditions, but no one would presume the wind will never change. As we clarify today, a recurrent nuisance is a permanent one, even if it is difficult to predict what the weather will be on any particular day.

■ Accordingly, we hold that a permanent nuisance may be established by showing that either the plaintiff's injuries or the defendant's operations are permanent. The presumption of a connection between the two can be rebutted by evidence that a defendant's noxious operations cause injury only under circumstances so rare that, even when they occur, it remains uncertain whether or to what degree they may ever occur again.

### V. Abatement

As noted above, many states make abatability the key test in determining whether a nuisance is temporary or permanent. [92] While the potential for equitable relief has never enjoyed that preeminence in Texas nuisance law, [93] it has nevertheless been recognized as a factor. In *Kraft v. Langford*, we stated that "another characteristic" of a temporary nuisance is "the ability of a court of equity to enjoin the injury causing activity." [94] Four years later, we stated that the distinction between tempo-

---

result from an *activity* of such a character and existing under such circumstances that it will be presumed to continue indefinitely; the *injury* must be constant and continuous, not occasional, intermittent or recurrent.") (emphasis added); *Walton*, 65 S.W.3d at 273 (finding it "helpful to first focus on the activity causing the *injury* and then the *injury* itself").

89. *Meat Producers, Inc. v. McFarland*, 476 S.W.2d 406, 410, 413 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.).

90. *Id.* at 411.

91. *City of Amarillo v. Ware*, 120 Tex. 456, 40 S.W.2d 57, 61 (1931) ("It is well known that the rain-fall in Texas during certain periods is scant.").

92. *See supra* note 17.

93. *See, e.g., Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984) (describing distinction between temporary and permanent nuisances without mention of abatability); *see also City of Merkel v. Smith*, 458 S.W.2d 940, 942 (Tex.Civ.App.-Eastland 1970, no writ) (holding trial court did not err in refusing jury question defining difference between permanent and temporary nuisance as "whether it can be abated at reasonable cost").

94. 565 S.W.2d at 227.

rary and permanent injury *"may depend on whether an injunction would be successful."* [95] But we have never indicated precisely when or how this factor applies.

Several members of the court of appeals expressed doubts in this case about the role abatability should play in distinguishing temporary and permanent nuisances. Three justices noted that *any* nuisance could theoretically be abated ("any nuisance man creates, man can abate"), but felt bound by *Kraft* to find these nuisance claims might be temporary based on evidence that an injunction might lessen them.[96] Two members dissenting from the denial of rehearing en banc argued that abatability could not convert a permanent nuisance into a temporary one, especially when it meant abating so many businesses and creating possible conflicts with federal regulations.[97]

■ For the reasons that follow, we hold that the characterization of a nuisance as temporary or permanent should not depend on whether it can be abated.

### A

We begin with the obvious—if a nuisance is abated, it is no longer permanent.[98] Damages for a permanent nuisance include those expected to occur in the future; [99] if abatement will eliminate that likelihood and restore lost property value, the latter is no longer the appropriate damage measure.[100] Thus, permanent injunctions and permanent nuisances are mutually exclusive—awarding both creates a double recovery.

■ But this rule is hardly unique to nuisance law. A permanent injunction issues only if a party does not have an adequate legal remedy.[101] If there is a legal remedy (normally monetary damages), then a party cannot get an injunction too. Accordingly, awarding both an injunction and damages as to future effects would constitute a double recovery. As former Chief Justice Guittard of the Fifth Court of Appeals once noted:

> Payment of damages, however, constitutes satisfaction for any injury that may be caused by the breach, whereas an injunction has the effect of a decree of specific performance restraining any breach that would otherwise cause damage. Therefore, if the court grants an injunction preventing the breach from continuing and becoming total, it should not at the same time give judgment for the full amount of liquidated damages specified in the contract.[102]

**95.** *Neely v. Cmty. Props., Inc.,* 639 S.W.2d 452, 454 (Tex.1982) (emphasis added).

**96.** 95 S.W.3d at 314 n. 7 (quoting 58 AM. JUR.2D *Nuisance* § 29 (1989) and cases cited therein, and stating "[w]hile we express doubt about drawing a distinction between a permanent and temporary nuisance based on such a general principle . . . we believe we must follow the *Kraft* decision").

**97.** *Id.* at 103 (Radack, C.J., joined by Taft, J., dissenting from the denial of motion for rehearing en banc).

**98.** *Kraft,* 565 S.W.2d at 227 ("An injury which can be terminated cannot be a permanent injury.").

**99.** *See supra* text accompanying notes 53–55.

**100.** *See Parkway Co. v. Woodruff,* 901 S.W.2d 434, 441 (Tex.1995) (reducing judgment that awarded both cost of repairs and lost market value in unrepaired home as double recovery to lost market value).

**101.** *Town of Palm Valley v. Johnson,* 87 S.W.3d 110, 111 (Tex.2001) (per curiam).

**102.** *Eberts v. Businesspeople Pers. Servs., Inc.,* 620 S.W.2d 861, 864 (Tex.Civ.App.-Dallas 1981, no writ).

This is a rule of general application. Texas courts have noted that future damages cannot be recovered if a permanent injunction issues to abate them in the context of cases involving covenants not to compete,[103] trade secrets,[104] wrongful discharge,[105] and real estate contracts.[106] Just as trial courts must consider potential abatement before awarding future damages in such cases, they must do so in nuisance cases as well. But for the reasons that follow, that does not mean abatement should be a factor in deciding whether a nuisance is temporary or permanent.

## B

Tying the distinction between temporary and permanent nuisances to abatability is problematic because in many cases it will be misleading. While an abatement may convert a permanent nuisance into a temporary one, it will by no means always have that effect. As a result, a trial court's decision on abatement will often point in the wrong direction, or no direction at all.

As noted above, if the effects of a nuisance are abated, it is no longer permanent. But the converse is not true—if a nuisance is *not* abated, that does not mean it *must be* a permanent nuisance.[107] If a nuisance depends on very rare and unpredictable conditions, it is a temporary nuisance. But the same facts may render a permanent injunction unavailable, as there is no threat of imminent harm.[108] Thus, a nuisance that is not abated might be temporary, or might be permanent.[109]

Additionally, denying an injunction does not change the underlying nuisance at all. Similarly, granting an injunction against a temporary nuisance only makes it more temporary. Abatement affects whether a nuisance is temporary or permanent only when a permanent injunction is granted against a permanent nuisance—no other injunction order has any effect.

103. *Id.*

104. *F.S. New Prods., Inc. v. Strong Indus., Inc.*, 129 S.W.3d 606, 631–32 (Tex.App.-Houston [1st Dist.] 2004, pet. filed) (rejecting argument that award of injunction and future damages was double recovery because record did not reflect any future damages were awarded).

105. *City of Ingleside v. Kneuper,* 768 S.W.2d 451, 457–58 (Tex.App.-Austin 1989, writ denied) (holding employee who obtained injunction reinstating him in former position could not recover future earnings).

106. *Redding v. Ferguson,* 501 S.W.2d 717, 720 (Tex.Civ.App.-Fort Worth 1973, writ ref'd n.r.e.) (holding party necessarily abandoned claim for specific performance of option contract by seeking damages for breach of contract).

107. *Burke v. Union Pac. Res. Co.,* 138 S.W.3d 46, 59 (Tex.App.-Texarkana 2004, pet. filed) ("While the ability to abate an injury with an injunction is a characteristic of a temporary injury, the unavailability of an injunction does not require a finding of a permanent injury."); *Apache Corp. v. Moore,* 891 S.W.2d 671, 680 n. 7 (Tex.App.-Amarillo 1994, writ denied, *cert. granted, judgm't vacated on other grounds by Apache Corp. v. Moore,* 517 U.S. 1217, 116 S.Ct. 1843, 134 L.Ed.2d 945 (1996)) (noting "unavailability of a successful injunction does not necessarily change a temporary injunction into a permanent one") (quoting *City of Odessa v. Bell,* 787 S.W.2d 525, 530 (Tex.App.-El Paso 1990, no writ); *Windfohr v. Johnson's Estate,* 57 S.W.2d 215, 217 (Tex.Civ.App.-Fort Worth 1932, no writ)) (affirming trial court's refusal to enjoin temporary nuisance).

108. *Operation Rescue–Nat'l v. Planned Parenthood of Houston & Southeast Tex., Inc.,* 975 S.W.2d 546, 554 (Tex.1998).

109. *See also* Dobbs, *supra* note 9, § 5.11(2), at 825 (noting that court may deny abatement because of defendant's plans to eliminate nuisance, so nuisance will be temporary even though not enjoined).

Even then, abating a permanent nuisance will not always render its effects temporary. For example, in some cases, an abatement of the source of a permanent nuisance will not put an end to the injury,[110] and thus the nuisance will still be considered permanent (under the rule noted in section IV). If the rule were otherwise, an owner who secured abatement of a source could not recover the lost market value of the subject property even though it was ruined for the foreseeable future. In addition, it is difficult to use abatability to separate nuisances by frequency and duration because injunctions come in so many different shapes and sizes. In some cases, it is impracticable to close down a nuisance completely, for reasons discussed more fully below.[111] In such cases, abatement may be sought to lessen a nuisance, but not necessarily eliminate it.[112] If abatement is granted, the nuisance may remain permanent, though in a less noxious form.

To sum up, abatement may convert a permanent nuisance into a temporary one, but it also may not. It certainly cannot turn a temporary nuisance into a permanent one, and denying abatement tells us nothing about the nuisance either. That being the case, we agree with the justices of the court of appeals that using abatability to categorize nuisances is more confusing than helpful.

### C

Using the equitable decision regarding abatement as a factor in making the legal distinction among nuisances is also problematic because the two decisions involve different considerations by different decision-makers at different points in the litigation.

■■■ Categorizing a nuisance as temporary or permanent is (within the confines discussed in parts III and IV above) a question for the jury.[113] But abatement is a discretionary decision for the judge after the case has been tried and the jury discharged.[114] One is only partly dependent on the other: while judges cannot permanently abate a nuisance until jurors decide there is one,[115] a trial judge may decide to

110. *See, e.g., Bayouth v. Lion Oil Co.,* 651 S.W.2d 423, 425 (Tex.App.-Eastland 1983), *rev'd,* 671 S.W.2d 867 (Tex.1984) (noting evidence that injury to farmland caused by saltwater seepage from neighboring oil operations could be remedied only by "a plowing and leeching process occurring over a twenty year period").

111. In this case, for example, the residents disavow any desire to close down two trucking firms completely, instead requesting that they be ordered to pave their storage yards and implement "management methods" for truck traffic so diesel exhaust and "dust storms" will no longer affect their properties as severely.

112. *See Beatty v. Washington Metro. Area Transit Auth.,* 860 F.2d 1117, 1124–25 (D.C.Cir.1988) ("All of the cases demonstrate that abatement does not necessarily mean total cessation or termination of the challenged activity."); Harper, *supra* note 14, § 1.30, at 145 ("The injunction, if granted, need not stop defendant's activity altogether and immediately.").

113. *See Bayouth,* 671 S.W.2d at 869.

114. *State v. Tex. Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex.1979) ("The determination of whether to grant an injunction based upon the ultimate issues of fact found by the jury is for the trial court, exercising chancery powers."); *Operation Rescue–Nat'l,* 975 S.W.2d at 551, 569–70 (affirming, as modified, court of appeals' judgment upholding permanent injunction issued based on post-verdict bench hearing); *Lamb,* 256 S.W.2d at 905 (rejecting objection that trial court erred in issuance of permanent injunction based on post-trial evidentiary hearing on balancing of equities).

115. *Valenzuela v. Aquino,* 853 S.W.2d 512, 513 (Tex.1993) (holding permanent injunction

abate a nuisance whether it is temporary or permanent, and may choose not to abate either even if that is the only remedy requested.[116]

A trial judge's decision on abatement often turns on considerations never presented to the jury, and unrelated to the frequency or duration of a nuisance. Blackstone expected the outcome of a nuisance claim to be the same whether filed in the law courts (for damages) or equity (for an injunction) because only "a very obstinate as well as an ill-natured neighbor... [would] rather continue to pay damages, than remove his nuisance."[117] But he had in mind a hog farm or tannery,[118] small-scale operations that like most others in pre-industrial England had little economic impact on anyone other than the parties.

In modern society, however, industries and nuisances often come in much larger packages, with effects on the public, the economy, and the environment far beyond the neighborhood. A court sitting in equity today must consider those effects by balancing the equities before issuing any injunction.[119]

As a result, courts may refuse to abate public works that create nuisance conditions no matter how often they occur or how long they are expected to last.[120] Even privately owned plants creating obnoxious odors may be allowed to continue, depending on where they are located and how badly they are needed.[121]

 Balancing the equities is not the only factor that judges sitting in equity must consider while jurors do not. Permanent injunctions "must be narrowly drawn and precise;"[122] it will often be easier for a jury to decide that certain plant operations create noxious conditions than it will be for a judge to draft a narrow and precise order that abates them. Further, environmental regulation involves a complex balance of costs and benefits, emission levels, implementation deadlines, reporting requirements, and continuing oversight that in some cases courts are ill-equipped to handle. Judges may hesitate to issue discretionary orders that require extensive oversight, or risk conflicts with other governmental regulations and agencies.

As the requirements for issuing an injunction are not the same as those that distinguish between nuisances, making the former a factor in deciding the latter conflates their disparate requirements. The many differences between who decides these matters and on what basis suggests that the distinction between temporary and permanent nuisances should not turn on whether the nuisance involved is or might be abated.

improper as one cause of action was invalid in Texas and other was not submitted to jury).

116. *Rainey v. Red River, T. & S. Ry. Co.*, 99 Tex. 276, 89 S.W. 768, 772 (1905) (suggesting landowner could be relegated to monetary compensation even though jury found railroad was nuisance and only remedy requested was abatement).

117. Blackstone, *supra* note 9, at 222.

118. *Id.* at 217.

119. *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002).

120. *Baugh v. Tex. & N.O. Ry. Co.*, 80 Tex. 56, 15 S.W. 587, 587 (1891).

121. *Storey v. Central Hide & Rendering Co.*, 148 Tex. 509, 226 S.W.2d 615, 618–19 (1950) (holding trial court should not have enjoined operations of hide-rendering plant found by jury to be a nuisance, as plant was located in industrial area, provided necessary services, and could be moved only at great expense to owners and to landowners in any new area to which it moved).

122. *Holubec v. Brandenberger*, 111 S.W.3d 32, 40 (Tex.2003) (quoting *Brown v. Petrolite Corp.*, 965 F.2d 38, 51 (5th Cir.1992)).

## D

As noted in part III, the distinction between temporary and permanent nuisances has long been affiliated in most jurisdictions with three consequences: the proper measure of damages, the proper number of suits, and the proper time for bringing them. Abatement may have an effect on damages, or it may not;[123] but it should not and cannot have an effect on the other two.

Permanent nuisances must be addressed in one suit, while temporary nuisances may have to be addressed in several.[124] If abatement converts a nuisance into a temporary one, then the illogical result is that enjoining a nuisance has the effect of making future suits regarding it possible. With respect to the number of suits that may be brought, using abatement to distinguish among nuisances makes little sense.

With respect to limitations, the effect is even more problematic. The date a nuisance claimant suffers a legal injury does not depend on whether that injury is eventually abated. Generally, a cause of action accrues when facts occur that authorize a party to seek justice,[125] regardless of the form that justice finally takes. Once a substantial invasion of the use and enjoyment of property occurs, it is hard to see why limitations should be tolled in some cases but not others depending on whether a judge may someday abate the source.

Additionally, there is the problem of vested rights. If a permanent nuisance has been in operation for many years, limitations will have long since barred suits for lost market value. But if the nuisance may be rendered temporary by a later abatement, losses suffered beginning two years before filing become recoverable again. These are necessarily part of the same losses that were previously barred; "[t]o permit barred claims to be revived years later would undermine society's interest in repose," and raise constitutional concerns as well.[126]

Though we have never addressed these precise problems with judicial abatement, we have considered the same effect with a voluntary abatement. In *Tennessee Gas Transmission Co. v. Fromme*,[127] contaminated water from the defendant's compressor station began flowing onto the plaintiff's land in 1948, was diverted elsewhere by the defendant in 1950, and suit was filed in 1952.[128] Even though diversion of the flooding had rendered the injury temporary under the standard definitions, we held the suit was barred two years after the first injury—the accrual date for a permanent nuisance.[129] Clearly, abatement in that case was not allowed to revive a permanent damage claim already barred.

■ We consider here only the running of limitations as to damages claims. Several courts have held that limitations (as opposed to laches) does not bar a suit

---

**123.** *See* part V(A).

**124.** *See* part II(C).

**125.** *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 221 (Tex.2003).

**126.** *Baker Hughes, Inc. v. Keco R. & D., Inc.,* 12 S.W.3d 1, 4 (Tex.1999) ("Thus, we have written that a statute extending the limitations period of a claim already barred by limitations violates the Texas Constitution's prohibition against retroactive laws, which is article I, section 16.").

**127.** 153 Tex. 352, 269 S.W.2d 336, 338 (1954).

**128.** *Fromme v. Tenn. Gas Transmission Co.,* 263 S.W.2d 574, 575 (Tex.Civ.App.-Austin 1953), *rev'd,* 153 Tex. 352, 269 S.W.2d 336 (1954).

**129.** *Fromme,* 269 S.W.2d at 338.

seeking only to enjoin a nuisance,[130] a question we do not reach as it is not this case. But in a suit seeking damages for a nuisance, we hold that abatement cannot revive barred permanent damages by allowing them to be asserted as temporary ones.[131]

### E

Finally, as the court of appeals noted, virtually any nuisance can be said to be abatable.[132] Even if a nuisance is one that cannot be eliminated, it is hard to imagine one that cannot be improved a little by a little equitable relief. As every nuisance could thus be characterized as abatable, this cannot be a reliable test for distinguishing temporary from permanent nuisances. For these as well as the reasons above, we believe abatement is not a proper or necessary consideration in distinguishing between nuisances.

We reaffirm that abatement may impact the amount of damages that can be awarded, just as equitable relief in any other type of case might. We recognize that jury submission of damages may be somewhat more complex in nuisance cases than in others when abatement is a possibility. In some cases, questions for past and future damages can simply be separated, and only the former awarded if a permanent injunction issues. But adjusting for abatement in nuisance cases may be more

confusing because the alternative damage awards are overlapping.[133] Nevertheless, for several reasons we do not think this difficulty is insurmountable.

Injunctive relief is within the trial court's discretion. Accordingly, there may be sufficient grounds for a judge to decide before submission to the jury which way that discretion is likely to go. In many cases, the trial court will have already addressed the relevant issues in deciding whether to issue a temporary injunction. If preliminary relief is granted and circumstances have not changed, there can be no permanent nuisance as it has already been terminated.[134]

Conversely, the importance of a particular plant to the community may tip the balance of equities against abatement, even if a jury were to find it to be a nuisance. Difficulties in drafting or enforcing an injunction may discourage the trial judge from considering the imposition of an equitable remedy well before a final decision has to be made.

Finally, in actions that involve only private interests, there is an important reason for trial judges to lean toward granting injunctive relief if other factors do not render it impossible. A nuisance changes the nature and takes away the use and enjoyment of neighboring property with-

---

130. *See Nugent v. Pilgrim's Pride Corp.,* 30 S.W.3d 562, 575 (Tex.App.-Texarkana 2000, pet. denied) (holding equitable relief not barred by limitations); *Abbott v. City of Princeton,* 721 S.W.2d 872, 875 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (same); *Stein v. Highland Park Indep. Sch. Dist.,* 540 S.W.2d 551, 554 (Tex.Civ.App.-Texarkana 1976, writ refused n.r.e.) (same).

131. Of course, if suit is filed within two years of the first occurrence, neither temporary nor permanent damages are barred, so the distinction is again irrelevant for limitations purposes.

132. 95 S.W.3d at 314 n. 7; *see also Beck Dev. Co. v. S. Pac. Transp. Co.,* 44 Cal.App.4th 1160, 52 Cal.Rptr.2d 518, 558 (1996) (noting "[s]ince a defendant could literally be ordered to move mountains to abate a nuisance, virtually everything can be said to be abatable").

133. *See* part III(B).

134. *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex.1978) (holding issuance of temporary injunction against further discharge of floodwaters rendered damages temporary).

out the owner's consent. Although governments have the power to take property pursuant to eminent domain, private entities usually do not. If only private interests are involved, courts may well favor the equitable option allowing neighboring owners to stop the uninvited nuisance, rather than the legal option forcing them to live with it and sending them a check.[135]

In sum, a judge may decide (for the above reasons or others) that a nuisance will or will not be abated even before a jury finds it exists. Assuming that decision is not an abuse of discretion,[136] the necessity of submitting alternative damages questions is thereby avoided. And in any event, simpler jury submission in some cases is not an adequate reason for awarding barred damages or a double recovery in others. While abatement cannot be entirely eliminated from affecting damage submission to a jury, limiting it to that issue avoids the current confusion that designates abatement as a "characteristic" of temporary nuisances for all purposes without any indication as to how, when, or why.

## VI. Application

 It remains to apply the foregoing principles to the facts before us. We examine the summary judgment record to determine if there is a question of fact whether the residents alleged a temporary or permanent nuisance. Applying the usual standard of review,[137]we find as a matter of law that the nuisances alleged were permanent.

In their affidavits, the residents aver nuisances generally that were "continuous," "ongoing," "regular," and "frequent." They make individualized allegations that their property was "constantly" or "always" covered with dirt and soot. They assert no conditions that make the lights and noise of which they complain variable.

The residents argue that their affidavits do not explicitly state that air-quality problems were "constant" or "continuous" (though all were alleged to be "ongoing," and "regular").Some residents described the noxious conditions as interfering with their enjoyment of property "sometimes" or "often." Others averred that conditions worsened or become intolerable only under certain combinations of wind and humidity. Taking every inference in the residents' favor, their affidavits assert conditions that occur at least several times in most weeks or months.

As we have clarified above, a nuisance need not occur daily to be deemed permanent. Conditions occurring as often as those alleged here can be adequately assessed by jurors in determining the total impact on neighboring property values. Odors that are most repugnant when the wind is from one direction are not temporary, at least when there is no evidence

**135.** *Lamb v. Kinslow,* 256 S.W.2d 903, 905 (Tex.Civ.App.-Waco 1953, writ ref'd n.r.e.) (holding injunction could issue against permanent nuisance involving burning cotton burrs near plaintiff's home regardless of availability of legal remedy).

**136.** *Id.* at 906 (holding post-trial injunction was not abuse of discretion); *cf. Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998) (holding that in reviewing Declaratory Judgments Act attorney fee award based on both evidentiary and discretionary matters, trial court could conclude no award was equitable or just regardless of jury's finding of reasonable and necessary fee).

**137.** *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex.2003) (holding summary judgment review is de novo, taking all evidence, inferences, and doubts in nonmovant's favor, and affirming only if no genuine issue of material fact exists and movant is entitled to judgment as a matter of law).

those winds are so rare and unexpected that jurors would have to guess their future impact on property values. Neither are dust clouds that occur only on certain days of the week temporary if they are likely to be about the same in the weeks, months, and years ahead.

Although the residents' affidavits contain many differences regarding how often the conditions alleged interfered with their use and enjoyment of property, none allege conditions that were so sporadic or unpredictable that a jury would have to guess their effect. Accordingly, they create no material fact question whether the nuisances here were permanent.[138]

Even so, the residents assert they raised a fact question whether the nuisances could have been rendered temporary by injunctive relief. For the reasons noted in part V, the possibility of an abatement cannot make these nuisances temporary, and thereby revive barred monetary damages.

The residents also argue that because the defendants have not connected each of their complaints with a particular source, each nuisance has not been shown to be permanent as a matter of law. In the first place, it was the residents' burden to allo-cate nuisances to defendants;[139] by lumping all the nuisances together and asserting unitary damages attributable to them all, the residents are hardly in a position to complain that the defendants have responded on the same basis. Further, air-quality cannot be viewed in a vacuum. It is true that if separate operations contribute separately to a nuisance, each may be liable only for its own contribution.[140] But the question of responsibility is different from the question whether a nuisance is temporary or permanent. As noted above, either a plaintiff's injuries or a defendant's operations can make a nuisance permanent. The residents' allegations here meet that test as a matter of law, even if neither they nor the defendants know who may have caused the conditions on any particular day.

■ Nor do we believe the trial court erred in denying the residents' motion for continuance of the summary judgment hearing.[141] The residents allege additional discovery was needed from the defendants, specifically as to (1) parts of their operations that could be improved, (2) violations of law that may have occurred, and (3) accidents in the plants that may have affected local conditions. But for the rea-

138. Similarly, as the residents' affidavits allege ongoing conditions that have bothered them for more than two years, neither the discovery rule nor fraudulent concealment apply. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex.1999) (holding fraudulent concealment delays accrual until claimant knows true facts); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (holding discovery rule defers accrual until claimant knows of facts giving rise to claim).

139. *Sherman Gas & Elec. Co. v. Belden*, 103 Tex. 59, 123 S.W. 119, 121 (1909) (holding defendant would be liable only for nuisance caused by its plant, not by other plants nearby); *Hughes v. Jones*, 94 S.W.2d 534, 535–36 (Tex.Civ.App.-Eastland 1936, no writ) (hold-ing allegation of joint nuisance by defendants required evidence that each was liable for acts of others).

140. *Sherman Gas*, 123 S.W. at 121; *Hughes*, 94 S.W.2d at 535–36; *Windfohr v. Johnson's Estate*, 57 S.W.2d 215, 216 (Tex.Civ.App.-Fort Worth 1932, no writ).

141. In their brief on the merits, the residents assert the trial court erred in denying them a court reporter for the summary judgment hearings. But creating a reporter's record is "a practice neither necessary nor appropriate to the purposes of such a hearing." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 n. 7 (Tex.1993). Thus, no error is presented.

sons noted above, the extent to which the conditions could be improved by partial abatement would not change whether the nuisances were temporary or permanent, and the residents have not indicated why they would have standing to enforce any violations of regulatory laws.

 We acknowledge that an industrial accident or other irregular occurrence could create a nuisance that is so different in character and potential injury that it must be treated as a temporary nuisance with a new limitations period, regardless of how long general industrial operations have been ongoing. But the residents' affidavits describe no sudden or recent changes in the nature of their discomfort; changes at the source would be relevant only if they resulted in changes in the residents' injuries. As further discovery from the defendants could not make the alleged nuisances temporary, we conclude there was no abuse of discretion.[142]

Finally, even though the defendants' motions for summary judgment only ad-dressed limitations for nuisance, the residents' remaining claims for trespass, negligence, negligence per se, negligent endangerment, and gross negligence are barred as well. Assuming that entry of photons, particles, or sound waves can constitute trespass,[143] and that a duty of care beyond nuisance law applies to property damage that is limited to inter-ference with enjoyment as opposed to physical damage (allegations we doubt but do not reach), they are barred two years after known injury begins.[144]

## VII. Conclusion

The Houston Ship Channel has made the Port of Houston the second largest in the United States. Built almost a century ago, its purpose was to attract and accom-modate enterprises not unlike those in-volved here. Of course, concentration of industrial plants in an industrial area is no excuse for pollution. Whether the defen-dants have abused their location is not before us; the only question here is wheth-

---

142. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995) (holding court of appeals erred in re-quiring additional discovery when facts need-ed for contractual construction were "fully developed"); *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986) (holding trial court's de-nial of a motion for continuance will not be disturbed absent clear abuse of discretion).We also reject the residents' argument that con-tinuance was mandatory as the defendants did not submit controverting affidavits. *Fritsch v. J.M. English Truck Line, Inc.*, 151 Tex. 168, 246 S.W.2d 856, 858 (1952) ("There is nothing in the rules on continuance requir-ing the granting of a first motion merely be-cause it is in statutory form and is not contro-verted by affidavit of the opposite party.").

143. *But see R.R. Comm'n of Tex. v. Manziel*, 361 S.W.2d 560, 567 (Tex.1962) ("To consti-tute trespass there must be some physical entry upon the land by some 'thing.' ") (quot-ing *Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 416 (1961)).

144. *Tenn. Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336, 338 (1954); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 443 (Tex.App.-Fort Worth 1997, writ de-nied); *Hues v. Warren Petroleum Co.*, 814 S.W.2d 526, 530–31 (Tex.App.-Houston [14th Dist.] 1991, writ denied). As the residents do not allege the nuisances here caused personal injuries beyond symptoms of discomfort and annoyance, we need not decide whether such claims would be barred. *Compare Mitchell Energy Corp.*, 958 S.W.2d at 443 (holding same limitations period applied to claims for personal injuries and property damage, as both were allegedly caused by same nuisance) *with Vann v. Bowie Sewerage Co.*, 127 Tex. 97, 90 S.W.2d 561, 563 (1936) (holding limita-tions barred property damage award but not personal injury award, as no evidence sug-gested plaintiffs knew of nuisance when they moved onto land).

er their neighbors have brought suit timely.

We once again affirm the general Texas rule that accrual of limitations should turn on the frequency and constancy of a nuisance. We clarify, however, that in deciding whether a nuisance is temporary or permanent, the standard of reference should not be a few days or weeks, but all occurrences over the period of years within which claimants can bring suit and courts can bring them to trial. Judges and jurors may presume from the circumstances that current conditions will continue,[145] absent evidence to the contrary.[146] We also hold that while damages must be adjusted to reflect any permanent abatement, the categorization of nuisances as temporary or permanent should not turn on that contingency.

In this case, the affidavits of the residents themselves establish that the conditions alleged here have been regular and continuous (though perhaps not daily) for many years beyond the two-year period preceding suit. Accordingly, we hold as a matter of law that their complaints are barred. We therefore reverse the court of appeals' judgment and render judgment for the defendants.

---

**145.** *See Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984); *Atlas Chem. Indus., Inc. v. Anderson,* 524 S.W.2d 681, 684 (Tex.1975).

**146.** *Rosenthal v. Taylor, B. & H. Ry. Co.,* 79 Tex. 325, 15 S.W. 268, 269 (1891) (holding nuisance is temporary if it is likely to be abated by any agency or by the defendant voluntarily); *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet,* 61 S.W.3d 599, 620–21 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (holding trial court did not err in denying injunctive relief as defendant had turned off offending lights, built taller privacy fence, moved noisy air conditioners, and otherwise abated nuisance voluntarily); *Cross v. Tex. Military College,* 65 S.W.2d 794, 795 (Tex.Civ. App.-Dallas 1933, writ dismissed) (holding nuisance voluntarily removed before suit was filed was temporary as a matter of law); *see also Weinhold v. Wolff,* 555 N.W.2d 454, 463 (Iowa 1996) (concluding hog-feeding facility's open waste pit was permanent nuisance despite speculation that technology would solve odor problem, as no evidence showed "odor control breakthroughs were near").