**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed April 5, 2022.**



In the

# Fourteenth Court of Appeals

### NO. 14-20-00641-CV

## HUSSION STREET BUILDINGS, LLC, Appellant

## V.

## TRW ENGINEERS, INC., Appellee

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-18371**

## M E M O R A N D U M   O P I N I O N

In this appeal from a traditional summary judgment, the plaintiff landowner claims its real property was injured by the failure of an engineering firm involved in developing the adjoining property to include a water-detention plan. The landowner asserted claims of negligence and breach of fiduciary duty, and the trial court granted the engineering firm's summary-judgment motion on the grounds that limitations bar the landowner's negligence claim and licensed engineers do not owe fiduciary

duties to non-clients. Because the engineering firm failed to conclusively establish that the landowner's negligence claims accrued more than two years before this suit was filed, we reverse the judgment as to the negligence claims. The engineering firm is correct, however, in asserting that it did not owe fiduciary duties to the landowner. Thus, we affirm that part of the judgment and sever it from the remainder of the case, which we remand for further proceedings.

## I. BACKGROUND

Hussion Street Buildings, LLC, (Hussion) owns the real property and the warehouse located at 1901 Hussion Street in Houston, Texas (the Property). Next door, an entity the parties refer to as "HCHA"[1] began developing a housing project known as Fenix Estates (the Project). Qualified Construction, Inc., was hired to construct the Project, and TRW Engineers, Inc., is an engineering firm involved in the Project.

### A. The 2017 Lawsuit Against HCHA and Qualified

In September 2017, Qualified allegedly severed the sewage line to the Property and Hussion sued HCHA and Qualified for damages. In that suit, Hussion also alleged that additional fill materials had been placed on the Project's site to raise its surface higher than the foundation on Hussion's Property, and that this eliminated natural ponding and redirected the natural flow of surface water so that additional water flowed from the Project to the Property. Hussion alleged that asphalt or concrete would be placed over the fill material, and that the Project's construction "will increase the water flow onto the Property beyond its current capacity, flood the

---

[1] The parties variously identify the entity or entities comprising HCHA as Harris County Housing Authority; Harris County Housing Authority Redevelopment Association; Harris County Housing Authority Redevelopment Authority, Inc.; Harris County Redevelopment Authority, Inc.; and Harris County Housing Authority Public Facility Corporation.

Property and damage [Hussion's warehouse] and its tenant's personal property." Hussion sought a temporary restraining order and temporary injunction restraining HCHA and Qualified from proceeding with construction until they paid to repair and reconnect Hussion's sewage line and until "plans are generated and implemented for proper handling of rain water on the [Project] site regarding changing the grade of the [Project] and to redirect the run[-]off water from the [Project] in such a[]way as to not cause irreparable harm to the Property." Hussion also sought a permanent injunction prohibiting HCHA and Qualified from redirecting or changing the grade or topography of the Project site in a way that would cause water to flow or pond differently than it had done before work on the Project began. The trial court denied the requested injunctive relief.

## B.     The 2020 Lawsuit Against TRW

Construction on the Project proceeded. According to Hussion, TRW had been hired to provide a water-detention plan for the Project but had failed to do so, and as a result, water or mud intruded into Hussion's warehouse during ordinary rain events at least four times, beginning on May 5, 2018.

Hussion sued TRW in March 2020 for negligence, gross negligence, professional negligence, and breach of fiduciary duty. TRW moved successfully for traditional summary judgment on the grounds that (1) Hussion's negligence claims are barred by the two-year limitations period,[2] and (2) licensed engineers do not owe non-clients fiduciary duties under Texas law. In a single issue, Hussion appeals the summary judgment.

---

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a).

3

## II. STANDARD OF REVIEW

We review a summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We review the summary-judgment evidence in the light most favorable to the respondent, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002). The party moving for traditional summary judgment bears the burden to show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Knott*, 128 S.W.3d at 216.

## III. NEGLIGENCE

TRW moved for summary judgment on Hussion's negligence claims on the ground that the claims are barred by limitations. As the movant seeking judgment on an affirmative defense, TRW bore the burden to conclusively establish that Hussion's negligence claims are time-barred. *See Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). To do so, TRW was required to establish the date when the cause of action accrued. *See id.* at 89.

Generally, a negligence claim accrues when the defendant's negligence causes the plaintiff a legal injury for which the plaintiff may obtain legal relief. *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 815 (Tex. 2021). Hussion alleges that it sustained the initial injury that is the subject of this suit on or about May 5, 2018, when the Project's increased elevation and lack of an adequate water-detention plan first caused water and mud to intrude into Hussion's warehouse. Hussion filed this suit in March 2020, less than two years after that event.

In its summary-judgment motion, TRW did not identify an earlier legal injury to Hussion from the Project's site elevation or its absence of an appropriate water-detention plan. TRW instead argued that "Hussion knew about the alleged drainage issues at least by October 2017, at which time it first filed claims for . . . injunctive relief regarding the drainage issues." In support of this argument, TRW relied on Hussion's first amended petition from its 2017 suit against HCHA and Qualified.[3]

The question of when the cause of action accrued can only be answered with reference to nuisance law. Neither party expressly made "nuisance" arguments at trial or on appeal, instead characterizing the claims as garden-variety negligence claims, but this makes no difference because "[d]eciding whether to use the term 'nuisance' . . . is merely a matter of semantics." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 604 (Tex. 2016). "[A] claim alleging a negligently created nuisance could be characterized simply as a traditional ordinary-negligence claim in which the legal injury involves interference with the use and enjoyment of land." *Id.* That description applies to this case: Hussion pleaded that TRW's Project design raised the Project's natural surface level higher than the foundation of Hussion's warehouse, and that the change in topography "redirect[s] rainfall away from the flow patterns in place prior to construction." Hussion alleged that in the twenty years its president had been involved with the Property, water had never intruded into Hussion's warehouse from rain or even floods, but as a result of the Project's raised elevation and TRW's failure to include a water-detention plan in the

---

[3] TRW asserted that Hussion also sued for damages "regarding the drainage issues," but the summary-judgment evidence, which must be construed in Hussion's favor, does not support this. Hussion's pleading in the earlier case included a request for an award of damages, but it also included claims for tortious interference in Hussion's contract with its tenant and claims arising from Qualified's cutting of Hussion's sewer line. The request for an award of damages is not linked to any specific claim or set of facts, so we must presume that Hussion sought damages in connection with claims unrelated to the drainage issues.

Project's design, water and mud have intruded into the warehouse "on at least four (4) separate occasions during run of the mill rain events for the City of Houston."

When a plaintiff alleges that its property has been flooded as a result of improvements constructed on another's property "diverting water from rain-falls from its usual flow upon plaintiff's land,"[4] the legal injury that the plaintiff allegedly suffered falls under the rubric of "nuisance." *See id.* at 594 (clarifying that "nuisance" is not a cause of action but a form of legal injury). This is so even if the word "nuisance" is never used. For example, the word "nuisance" does not appear in *Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336 (1954), but the Supreme Court of Texas nevertheless applied nuisance law in that case to determine when the cause of action accrued for the flooding of the plaintiff's land. *See id.*, 153 Tex. at 354, 269 S.W.2d at 338; *see also Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 279 n.70 (Tex. 2004) (citing *Fromme* with the parenthetical, "holding *nuisance* claim accrued when flooding began, and was barred by limitations even though greater part of damage occurred within two years of suit") (emphasis added).

Determining when a cause of action accrues for a nuisance injury frequently depends on whether the nuisance is permanent or temporary. If the nuisance injury is permanent, then a single cause of action accrues for all damages when the injury first occurs or is first discovered. If the nuisance injury is temporary, then a new cause of action accrues upon each injury. *Schneider*, 147 S.W.3d at 270 ("A permanent nuisance claim accrues when injury first occurs or is discovered; a temporary nuisance claim accrues anew upon each injury.") (footnotes omitted).

---

[4] *Austin & N.W. Ry. Co. v. Anderson*, 79 Tex. 427, 433, 15 S.W. 484, 485 (1891).

TRW's summary-judgment argument that Hussion "knew about the alleged drainage issues at least by October 2017" does not answer the question of when the drainage problems first injured Hussion's property, much less whether that injury was permanent. Simply pointing out that Hussion knew in 2017 of the potential for future flooding does not negate Hussion's allegation that the four instances when water or mud intruded into the warehouse were "separate occasions" each of which occurred after the 2017 lawsuit and less than two years before Hussion filed this suit. If, as TRW assumes, a single cause of action for all future harm accrues when a landowner first learns that a neighbor's use of property is likely to damage the landowner's property in the future, then it would not be the law that a separate cause of action accrues for each temporary injury, because the landowner would know of the potential for injury when the first injury occurred. But, this is not the law. For example, in *Austin & Northwest Railway Co. v. Anderson*, a railway constructed roadbeds and culverts in 1881 that caused rainwater to inundate Anderson's land. *Austin & N.W. Ry. Co. v. Anderson*, 79 Tex. 427, 431, 15 S.W. 484, 484 (1891). Redirected rainwater destroyed Anderson's crops in 1886, 1887, and 1888. *Id.*, 79 Tex. at 431–32, 15 S.W. at 484. Although Anderson would have been aware after the first inundation that the roadbeds and culverts had the potential to damage his land, the court held that, because "the land is only injured or the crops occasionally destroyed by rains, the just and rational rule, as adopted in this state, is that successive actions may be brought for the injuries as they occur." *Id.*, 79 Tex. at 433, 15 S.W. at 485.

In its summary-judgment reply, TRW asserted that Hussion claimed to have been already injured in 2017, but the cited evidence does not support that contention. For example, TRW claimed that Hussion alleged in the 2017 lawsuit that changes to the Project site redirecting water flow toward the Property "allegedly lowered the

7

rental value of the Property." But Hussion made no such allegation; rather, Hussion alleged that the Project site's topography changes "*will* and are designed to flood the Property,"[5] and that the actions of Qualified and HCHA are "are intentional and *calculated to* reduce the value of the Property and force [Hussion] to sell it for less than market value."[6] Hussion did not allege that these threatened harms already had occurred.

TRW also cites a 2017 letter to HCHA and Qualified from Hussion's principal Brantly Minor. According to TRW, Minor "complained that the lack of water retention and the redirection of the flow of water was detrimental to the use and value of the Property—a clear claim that an injury had occurred." But Minor actually referred to "Qualified's *effort* to change/redirect the natural flow of surface water on its construction site in a manner that is detrimental to the use and therefore, the value, of [the Property]," and wrote that "[t]he new flow patterns *will* increase the water flow beyond the current capacity . . . ."[7] Again, Hussion did not allege that the anticipated harm to the Property from excess water flowing from the Project's site had already occurred, but instead expressed concerns about what would happen in the future if construction were allowed to proceed without an appropriate water-detention plan in place.

In sum, TRW failed to establish conclusively that Hussion's negligence claims accrued more than two years before this suit was filed. We accordingly conclude that the trial court erred in granting summary judgment as to those claims.[8]

---

[5] Emphasis added.

[6] Emphasis added.

[7] Emphasis added.

[8] Because the burden never shifted to Hussion to raise a genuine issue of material fact, we need not consider Hussion's challenges to the trial court's rulings sustaining TRW's objections to Hussion's summary-judgment evidence.

## IV. BREACH OF FIDUCIARY DUTY

Hussion pleaded that TRW breached its fiduciary duties to Hussion, "specifically the duty to protect the public [22] Tex. Admin. Code § 137.55, duty to be objective and truthful § 137.57, and duty of competence § 137.59." The cited sources provide in relevant part as follows:

> Engineers shall be entrusted to protect the health, safety, property, and welfare of the public in the practice of their profession. The public as used in this section and other rules is defined as any individual(s), client(s), business or public entities, or any member of the general population whose normal course of life might reasonably include an interaction of any sort with the engineering work of the license holder.
>
> Engineers shall not perform any engineering function which, when measured by generally accepted engineering standards or procedures, is reasonably likely to result in the endangerment of lives, health, safety, property, or welfare of the public. Any act or conduct which constitutes incompetence or gross negligence, or a criminal violation of law, constitutes misconduct and shall be censurable by the board.

22 TEX. ADMIN. CODE § 137.55(a), (b). Section 137.57 states, "Engineers shall issue statements only in an objective and truthful manner." *Id.* § 137.57(a). And section 137.59 provides, "Engineers shall practice only in their areas of competence." *Id.* § 137.59(a).

TRW moved for summary judgment on Hussion's breach-of-fiduciary-duty claim on the ground that engineers do not owe fiduciary duties to non-clients under Texas law.

TRW is correct. Indeed, courts have declined to hold that engineers owe fiduciary duties even to their own clients. *See Sheffield Dev. Co. v. Carter & Burgess, Inc.*, No. 02-11-00204-CV, 2012 WL 6632500, at *10 (Tex. App.—Fort Worth Dec. 21, 2012, pet. dism'd). The provisions of the Administrative Code on which Hussion relies do not create fiduciary duties owed to the public at large, nor

do they purport to do so. They do not refer to "duty" at all, much less to the elevated duties owed by fiduciaries.

Hussion nevertheless argues that the Administrative Code creates an informal fiduciary relationship. This argument misapprehends the nature of an informal fiduciary relationship. An informal fiduciary relationship, also known as a "confidential relationship," may arise "where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992) (quoting *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 261 (1951)), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002). The existence of an informal relationship is "determined from the actualities of the relationship of the persons involved." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). If a business transaction is involved, "the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998). Fiduciary duties arise only in the context of fiduciary relationships, and Hussion does not claim to have had a relationship of trust and confidence with TRW that existed independently from, and prior to, TRW's work on the Project.

As support for the existence of a claim for breach of fiduciary duty, Hussion Street also relies on *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 WL 2846419 (Tex. App.—San Antonio Oct. 3, 2007, no pet.) (mem. op.), *superseded by statute as stated in Bruington Eng'g Ltd. v. Pedernal Energy L.L.C.*, 403 S.W.3d 523, 529 n.4 (Tex. App.—San Antonio 2013, no pet.). According to Hussion, the case implies the existence of a claim against an engineer for breach of fiduciary duty. In that case, the appellant engineering firm unsuccessfully appealed the denial of its motion to

dismiss a client's claims against it for failure to file a certificate of merit. *See id.* at *2; TEX. CIV. PRAC. & REM. CODE ANN. § 150.002 (dismissal required if plaintiff fails to file certificate of merit regarding damage claims arising out of the provision of professional services by a licensed professional engineer). The *Gomez* court held only that the cited statute did not apply to the client's claims of tortious interference with a contract, conspiracy, breach of contract, wrongful termination, breach of fiduciary duty, breach of the duty of loyalty, and breach of the duty of good faith and fair dealing, because the claims did not arise from the engineer's provision of professional services. *See Gomez,* 2007 WL 2846419, at *3. The holding does not imply that professional engineers owe fiduciary duties to clients, much less to non-clients.

Because TRW owed no fiduciary duties to Hussion, we conclude that the trial court properly granted summary judgment against Hussion on its breach-of-fiduciary-duty claim.

## V. CONCLUSION

Although the trial court erred in granting summary judgment regarding Hussion's negligence claims, its claim for breach of fiduciary duty is not legally cognizable. We accordingly reverse the judgment as to the negligence claims, affirm the summary judgment as to the breach-of-fiduciary-duty claim, and sever the claim for breach of fiduciary duty from the remainder of the case, which we remand for further proceedings.


/s/     Tracy Christopher
        Chief Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.

11